ATCHISON, T. & S. F. RY. Co. et al. v. UNITED STATES (INTERSTATE
COMMERCE COMMISSION et al., Interveners).

(Commerce Court. February 26, 1913.)

No. 61.

1. COMMERCE (§ 95*)—INTERSTATE COMMERCE COMMISSION—RATES—COMMERCE COURT—JURISDICTION.

The Commerce Court cannot consider evidence taken before the Interstate Commerce Commission for the purpose of determining in the first instance whether a particular freight rate is inherently unreasonable; such determination being within the jurisdiction of the Commission as a condition precedent to the exercise of its right to fix reasonable rates for the future.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

2. CARRIERS (§ 26*)—INTERSTATE COMMERCE—RATES — DETERMINATION — REASONABLENESS.

An order of the Interstate Commerce Commission establishing a rate of $1 a hundred on lemons from California to Atlantic Coast points *held* not inherently arbitrary or unreasonable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. § 26.*]

3. CARRIERS (§ 26*)—INTERSTATE COMMERCE—RATES—REASONABLENESS.

The fixing of a freight rate by the Interstate Commerce Commission at a sum not exceeding the bare out-of-pocket expense of the service would be arbitrary, unreasonable, and an improper exercise of the Commission's jurisdiction, in the absence of extraordinary circumstances and conditions justifying it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. § 26.*]

4. CARRIERS (§ 26*)—INTERSTATE COMMERCE—FREIGHT RATES—REASONABLENESS.

Where an interstate freight rate on lemons fixed by the Interstate Commerce Commission was such as to afford considerably more than the out-of-pocket expense of the service and even exceeded the part of the entire operating costs fairly apportionable to the particular traffic, contributing to some extent to the payment of interest, charges, and dividends, it was neither unreasonable nor arbitrary.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. § 26.*]

5. CARRIERS (§ 26*)—INTERSTATE COMMERCE—RATES—REASONABLENESS—CONFISCATION.

A rate on a particular commodity fixed by the Interstate Commerce Commission was not objectionable as confiscatory, in violation of the fifth amendment to the federal Constitution, as depriving the carrier of property without due process of law and taking its property without just compensation, on the theory that the carrier was entitled to a rate on each class of articles sufficient to bear the fair proportionate part of the service and some profit in addition thereto.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. § 26.*]

Petition by the Atchison, Topeka & Santa Fé Railway Company and others against the United States, and the Interstate Commerce Commission, and the Arlington Heights Fruit Company and others, intervening respondents, to enjoin the enforcement of a rate on lemons from the Pacific to Atlantic Coast points of one dollar a hundred,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as confiscatory. On motion to strike out evidence taken before the Interstate Commerce Commission and on final hearing. Petition dismissed.

For opinion of Interstate Commerce Commission, see ·22 Interst. Com. Com'n R. 149.

Winfred T. Denison, Asst. Atty. Gen. (Thurlow M. Gordon, Special Asst. Atty. Gen., on the brief), in support of the motion to strike out evidence.

Robert Dunlap, T. J. Norton, and H. A. Scandrett, all of Chicago, Ill., and C. W. Durbrow, of San Francisco, Cal. (Gardiner Lathrop and F. C. Dillard, both of Chicago, Ill., W. F. Herrin, of San Francisco, Cal., and A. S. Halsted, of Los Angeles, Cal., on the brief), for petitioners.

Blackburn Esterline, Special Asst. Atty. Gen. (Winfred T. Denison, Asst. Atty. Gen., on the brief), for the United States.

P. J. Farrell, of Washington, D. C., for Interstate Commerce Commission.

Asa F. Call, of Los Angeles, Cal., and Wm. F. Lamb, of Chicago, Ill., for intervening shippers.

Before KNAPP, Presiding Judge, and HUNT, CARLAND, and MACK, Associate Judges.

MACK, Judge. The facts in this case are fully stated in the opinion of this court rendered in Atchison, Topeka & Santa Fé Railway Co. et al. v. I. C. C. (Com. C.) 190 Fed. 591, in which the original order of the Commission reducing the car load blanket rate on lemons from California to the Eastern territory from $1.15 to $1 per hundred pounds was annulled, because in the judgment of this court it was not based upon a determination by the Commission that the $1.15 rate was unreasonable, but upon other considerations.

[1] While there had been a full hearing granted by the Commission, and while a great mass of conflicting testimony bearing upon this question had been presented to it and was preserved in the record, it was beyond the province of this court to consider this testimony for the purpose of determining in the first instance whether the $1.15 rate was inherently unreasonable. Such a determination by the Commission itself is a statutory condition precedent to the exercise of its power to fix reasonable rates for the future. Atl. Coast Line R. Co. v. I. C. C. (Com. C.) 194 Fed. 449; L. & N. Ry. Co. v. I. C. C. (Com. C.) 195 Fed. 541; I. C. C. & U. S. v. L. & N. Ry. Co., 227 U. S.·88, 33 Sup. Ct. 185, 57 L. Ed. ——.

In annulling the order, this court stated that it was without prejudice to a reopening and reconsideration of the original proceedings before the Commission. Thereupon the Commission reopened the proceedings, took some additional testimony, and again reduced the rate to $1. In the report accompanying the order, it is expressly stated that the $1.15 rate was inherently unreasonable on transportation considerations alone, irrespective of any question of tariff protection.

The present petition aims to have this order annulled: First, on the ground that the finding of the Commission that the $1.15 rate was

unreasonable is a mere subterfuge and without evidence to support it; second, that the Commission acted arbitrarily and in disregard of the evidence in fixing the $1 rate; third, that this rate is confiscatory.

[2] First. The original order was annulled, not because in our judgment the Commission could not have found the $1.15 rate inherently unreasonable on the evidence before it, but because it had not done so. Inasmuch as there was a very considerable mass of testimony which, if believed by the Commission, would have justified such a finding in the first instance, the condition precedent to the exercise of the power to fix reasonable rates has been met.

Second. The same testimony which in the judgment of the Commission demonstrated the unreasonableness of the $1.15 rate was amply sufficient to relieve the Commission from any charge of having fixed the $1 rate arbitrarily in the sense that there was no substantial evidence before it in support of its conclusion. The very history of the lemon rate, the shippers' version of the causes that kept the $1 rate in force for nearly six years just preceding the change, the relation between it and the orange rate during most of this time, the shorter average haul of lemons as against oranges in the past, which, to some extent at least, would probably continue in the future, were all facts bearing upon the intrinsic reasonableness of the rate and the reasonableness of fixing the lemon lower than the orange rate, especially under an order permitting a higher minimum loading to be enforced for lemons than for oranges, when shipped under ventilation. The weight to be accorded this evidence as against evidence offered by the carriers tending to the conclusion that a $1 rate would not afford the carrier all the revenue which this particular traffic ought justly to yield and the determination of what would be a reasonable rate were within the exclusive jurisdiction of the Commission and are not subject to our review, unless the Commission, in fixing the rate at $1, acted arbitrarily or in such an unreasonable manner as to give the petitioners the shadow but not the substance of a conclusion based upon the evidence before it.

[3] If the Commission had professed to fix a rate at not exceeding the bare out-of-pocket expense, it would be the duty of this court in this case, where no such extraordinary circumstances and conditions are shown as might otherwise justify such action, to annul the order, as evidencing an arbitrary and unreasonable exercise of the Commission's power. Southern Ry. Co. v. St. Louis Hay Co., 214 U. S. 297, 29 Sup. Ct. 678, 53 L. Ed. 1004; Interstate Commerce Commission v. Stickney, 215 U. S. 98, 30 Sup. Ct. 66, 54 L. Ed. 112.

[4] Here, however, it is not only clear that the $1 rate is very considerably in excess of the mere out-of-pocket expense, but, in the judgment of the Commission, based upon the evidence before it, it even exceeded that part of the entire operating costs fairly to be apportioned to this particular traffic, and thus, in its judgment, contributed, to some extent, to the payment of interest charges and dividends.

That the Commission, in reaching this conclusion, failed to follow the expert evidence offered by the railroads in the matter of proportionate operating cost would not justify this court in annulling the

order, especially as it is concededly impossible to determine with accuracy the fair proportionate cost of transporting any single kind of merchandise.

Indeed, only the clearest evidence that the Commission had completely misconceived the testimony or had willfully disregarded it could sustain the charge of an arbitrary or unreasonable discharge of the statutory and constitutional duties imposed upon it. No such evidence is to be found in this case.

[5] Third. While it is alleged that even under the $1.15 rate the entire revenues of some of the companies do not reach the minimum to which they are constitutionally entitled, the proof was not directed toward and is entirely inadequate to sustain this charge.

The charge of confiscation, however, is based primarily upon a claim of constitutional right to a rate for each distinct service—that is, for the carriage of each class of articles—which shall not be less than the fair proportionate cost of the service and some profit in addition thereto.

The constitutional protection is afforded by the fifth amendment, in the clause reading:

"Nor shall any person * * * be deprived of * * * property without due process of law; nor shall private property be taken for public use, without just compensation."

It is unnecessary to determine in this case whether a public service corporation is constitutionally entitled under all circumstances to a rate equal to its out-of-pocket expense (see St. L. & San Francisco Ry. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; Atlantic Coast Line v. N. Car. Corp. Com'n, 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398) inasmuch as the $1 lemon rate is clearly far in excess of such a return.

That relative freight rates have not been based upon the fair proportionate cost or the value of the service alone or in combination is demonstrated by the entire history of freight classification. The carrier cannot complain of a violation of its constitutional rights if, not to favor some person or class, but for the general welfare, it is compelled to make a rate for some particular service which, though in excess of the out-of-pocket expense, would nevertheless be confiscatory if it were applied to all of its freight; that is, the carrier has no constitutional right to a rate for each distinct kind of service which will equal its proportionate share of the entire operating expenses. Minneapolis & St. Louis R. Co. v. Minnesota, 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151; St. L. & S. F. R. Co. v. Gill, supra; Atl. C. L. v. N. C. Corp. Com'n, supra.

Even, therefore, if it had been clearly proven that the $1 rate on lemons, though in excess of the out-of-pocket cost, did not yield its full proportion of the entire operating expenses of the road, no claim of confiscation in the sense of a violation of constitutional right could be based thereon.

In view of the conclusions reached, it is unnecessary to consider the motion of the United States to strike out certain testimony offered in this court.

The petition will be dismissed.