McLEAN LUMBER CO. et al. v. UNITED STATES.

(District Court, E. D. Tennessee, S. D.   October 14, 1916.)

No. 13.

1. COMMERCE ⊂⊃91—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS.
    An order of the Interstate Commerce Commission, made on petition of shippers complaining of new rates about to be established by a railroad company, which, while not granting relief to the extent prayed for by retaining the old rates in force, establishes a schedule of new and higher rates, but lower than those proposed by the company, is not a mere negative order, and is reviewable by the courts.

    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 143; Dec. Dig. ⊂⊃91.]

2. COMMERCE ⊂⊃92—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS —VENUE.
    Act Oct. 22, 1913, c. 32, 38 Stat. 219 (Comp. St. 1913, § 994), which provides that "the venue of any suit hereafter brought to enforce, suspend, or set aside * * * any order of the Interstate Commerce Commission shall be in the judicial district wherein is the residence of the party or any of the parties upon whose petition the order was made, * * * except that where the order does not relate either to transportation or to a matter so complained of before the Commission the matter covered by the order shall be deemed to arise in the district where one of the petitioners in court has either its principal office or its principal operating office." Held, that a suit by petitioners before the Commission, to review an order establishing railroad rates, whether such order was made on their petition or not, was within the jurisdiction of the court of the district wherein all the petitioners either reside or have their principal operating office, and that whether or not the railroad company has its principal operating office within the district is immaterial.

    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig. ⊂⊃92.]

3. COURTS ⊂⊃325—JURISDICTION OF FEDERAL COURTS—WAIVER OF OBJECTION.
    A motion by defendants to dismiss on grounds going to the merits is a waiver of any objection to the venue or jurisdiction of the particular court, where it has general jurisdiction by reason of diversity of citizenship.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 884; Dec. Dig. ⊂⊃325.]

4. COMMERCE ⊂⊃93—INTERSTATE COMMERCE COMMISSION—SUIT TO REVIEW RATE ORDER—PERSONS ENTITLED TO MAINTAIN—"INTEREST."
    Owners of lumber mills, whose operation is dependent to a large extent upon logs shipped by them over a particular railroad, have such a pecuniary "interest" in the rates charged for the transportation of logs over such road as to entitle them to maintain a suit to enjoin en-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

forcement of an order of the Interstate Commerce Commission fixing such rates, made in a proceeding to which they were parties.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 144; Dec. Dig. ☞93.

For other definitions, see Words and Phrases, First and Second Series, Interest.]

5. COMMERCE ☞96—INTERSTATE COMMERCE COMMISSION—SUIT TO ENJOIN ENFORCEMENT OF RATE ORDER.

A suit by shippers to enjoin enforcement of an order of the Interstate Commerce' Commission requiring the establishment and maintenance of rates is not open to the objection that it seeks to have the court itself establish rates.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 146; Dec. Dig. ☞96.]·

6. COMMERCE ☞92—INTERSTATE COMMERCE COMMISSION—SUIT TO ENJOIN ENFORCEMENT OF RATE ORDER.

Jurisdiction of such a suit is not affected by the fact that the order of the Commission has already been complied with by the railroad company by putting the rates into effect.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig. ☞92.]

7. COMMERCE ☞91—INTERSTATE COMMERCE COMMISSION—ORDERS REVIEWABLE.

A conclusion by the Interstate Commerce Commission on a question of fact, such as the reasonableness of a rate, the correctness of which depends wholly upon a consideration of the weight to be given the evidence before it, will not be reviewed by the court; but a conclusion which plainly involves, under the undisputed facts, an error of law, or which is supported by no substantial evidence, will be so reviewed.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 143; Dec. Dig. ☞91.]

8. COMMERCE ☞91—INTERSTATE COMMERCE COMMISSION—LEGALITY OF RATE ORDER.

An order of the Interstate Commerce Commission directing the establishment by a railroad company of an increased rate on logs between certain points as a reasonable rate *held* supported by substantial evidence, and not to involve any error of law which would authorize a court to enjoin its enforcement at the suit of shippers.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 143; Dec. Dig. ☞91.]

9. COMMERCE ☞85—INTERSTATE COMMERCE COMMISSION—ORDER INCREASING RATES—GROUNDS.

It is the duty of the Interstate Commerce Commission, in passing on the reasonableness of a rate, to consider the conditions affecting the welfare of both shippers and carrier; but the carrier is not to be denied the right to change from an unreasonably low rate, which has formerly prevailed, to a just and reasonable charge for the future, merely because of the injurious consequences which would result to shippers from a change in the rate.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. ☞85.]

In Equity. Suit by the McLean Lumber Company, the Berry Lumber & Stave Company, the J. M. Card Lumber Company, and the Williams & Voris Lumber Company against the United States, in which the Interstate Commerce Commission intervened. On motions by complainants for preliminary injunction and by defendant and intervener to dismiss. Motion for injunction denied, and motions to dismiss for want of equity granted.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes .

Sizer, Chambliss & Chambliss, of Chattanooga, Tenn., for plaintiffs.

Blackburn Esterline, of Washington, D. C., and Lewis M. Coleman, of Chattanooga, Tenn., for the United States.

Joseph W. Folk and Charles W. Needham, both of Washington, D. C., for Interstate Commerce Commission.

Before WARRINGTON, Circuit Judge, and McCALL and SANFORD, District Judges.

PER CURIAM. The McLean Lumber Company and three other corporations engaged in business in Chattanooga, Tenn., having filed a petition against the United States to set aside certain orders made by the Interstate Commerce Commission in the matter of the rates on logs in carload shipments from stations in Alabama and Mississippi on the line of the Alabama Great Southern Railroad Company to Chattanooga, Tenn., subsequently entered a motion for an interlocutory injunction restraining the enforcement of these orders pendente lite. This motion has been heard by three judges, as provided by Act Oct. 22, 1913, c. 32, 38 Stat. 220 (Comp. St. 1913, § 998), upon the petition and a transcript of the proceedings before the Commission exhibited therewith. There were also heard at the same time motions to dismiss the petition entered by the United States and by the Commission, which had, of its own motion, appeared as a defendant.

In 1900 the railroad company voluntarily published a schedule of rates on the interstate shipment of logs from stations on its lines into Chattanooga, varying according to distances, which remained in effect, with practically no change, until 1913, when it filed a new schedule for the purpose of canceling the former rates and putting higher ones into effect. The petitioners filed with the Commission a petition protesting against the proposed rates as unreasonably high, and the proposed schedule was thereupon suspended pending a hearing by the Commission as to the reasonableness of the rates. At the hearing the railroad company offered in lieu to establish another schedule, lower than the new rates at first proposed, but higher than those which had been in effect since 1900. After due hearing the Commission filed its report, finding the rates last offered to be reasonable (Chattanooga Log Rates, 30 I. C. C. 36, 39), and entered an order requiring the railroad company to cancel its former rates, and to establish these new rates by due publication, by June 1, 1914, and to maintain them for two years thereafter. In compliance with this order, the railroad company established and put these new rates into effect May 22, 1914.

Subsequently, the petitioners having petitioned for a rehearing and for a restoration of the former rates, the Commission granted a rehearing and reopened the case, but continued the new rates into effect pending a decision upon the rehearing. On July 23, 1915, the Commission filed its report on the rehearing, finding the new rates theretofore established to be unreasonably high as to certain distances, and making certain modifications therein (Chattanooga Log Rates, 35 I. C. C. 163, 171), and entered an order requiring the railroad company to cease, on or before September 15, 1915, from charging the new rates.

which had gone into effect under the original order as to these distances, and to establish, on or before said date, by proper publication, and maintain for two years thereafter, new rates which should not exceed those set forth in the order—being the rates which had been last offered by the railroad company and which had already gone into effect, as partially lowered by the Commission on the rehearing. All of the new rates thus ordered to be put into effect were, however, materially higher than those which had been established in 1900 and maintained until May 22, 1914. These new rates were duly published by the railroad company and went into effect September 15, 1915, as ordered. Thereupon, on January 10, 1916, almost four months after the new rates had gone into effect, the shippers filed their petition in this court, alleging that the new rates were unreasonable, and praying that the Commission's orders of March 3, 1914, and July 23, 1915, be annulled and their operation enjoined.

Our conclusions as to the several motions are:

[1] 1. There is no want of jurisdiction in the court to hear and determine the petition, upon the alleged ground that the orders sought to be annulled and enjoined are negative, and not affirmative. These orders are not in fact negative, as mere dismissals of the petitioners' complaint against the proposed rates, but affirmatively require the railroad company to establish and maintain the new and higher rates in controversy. Clearly, therefore, the instant case is not within the rule of Procter & Gamble v. United States, 225 U. S. 282, 32 Sup. Ct. 761, 56 L. Ed. 1091, and Hooker v. Knapp, 225 U. S. 302, 32 Sup. Ct. 769, 56 L. Ed. 1099, that a court is without jurisdiction to annul and enjoin orders of the Commission which merely refuse to give petitioners the relief sought by them, but is, on the contrary, ruled by analogy, at least, by the Tap Line Cases, 234 U. S. 1, 22, 34 Sup. Ct. 741, 58 L. Ed. 1185, in which it was held that an order requiring railroad carriers to cease and abstain from certain practices is affirmative in character and reviewable by the court. And see the Intermountain Rate Cases, 234 U. S. 476, 490, 34 Sup. Ct. 986, 58 L. Ed. 1408, in which it was held that there was jurisdiction to review an order of the Commission refusing to grant the request of carriers to be permitted to charge lower rates for long than for short hauls; the court saying that, while such order might be in one sense negative, it was in another and broader sense affirmative, since it refused that which the statute in affirmative terms declared should be granted if the prescribed conditions existed.

[2] 2. There is no want of jurisdiction in the court to hear and determine the petition on the ground that it does not appear that the railroad company has its principal operating office in this district. Act Oct. 22, 1913, c. 32, 38 Stat. 219, 221 (Comp. St. 1913, § 994), abolishing the Commerce Court and vesting its jurisdiction in the several District Courts of the United States, superseded the former provision as to venue contained in section 16 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379) as amended by section 5 of Act June 29, 1906, c. 3591, 34 Stat. 584, 592 (Comp. St. 1913, § 8584), and provided that:

"The venue of any suit hereafter brought to enforce, suspend, or set aside * * * any order of the * * * Commission shall be in the juridical district wherein is the residence of the party or any of the parties upon whose petition the order was made, except that where the order does not relate to transportation or is not made upon the petition of any party the venue shall be in the district where the matter complained of in the petition, before the Commission arises, and except that where the order does not relate either to transportation or to a matter so complained of before the Commission the matter covered by the order shall be deemed to arise in the district where one of the petitioners in court has either its principal office or its principal operating office."

Three of the petitioners, upon whose complaint the hearing was had before the Commission resulting in the orders in question, are residents of this district, and the fourth has its principal office herein. Obviously, therefore, whether the orders in question be regarded as made upon their petition, or as not relating to transportation, or as not made on the petition of any party, there is, in either alternative, venue in this district, under the express terms of the act.

[3] Furthermore, both the United States and the Commission, a voluntary defendant, have, by their written motions, moved to dismiss the petition upon grounds based in part upon want of equity on its face and going to the merits, without objection to the venue; this latter objection having been subsequently made orally at the hearing in behalf of the United States alone. And since this objection does not go to a general want of jurisdiction in District Courts of the United States to hear and determine the controversy, but merely to the local jurisdiction of this court, it is clear, by analogy to the rule in cases where there is general federal jurisdiction by reason of diversity of citizenship, but want of local jurisdiction by reason of the residence of the parties (Western Loan Co. v. Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101), that the making of such defense upon the merits is a waiver of the defect, if any there be, in the venue or local jurisdiction.

[4] 3. The petitioners have such interest in the rates ordered by the Commission to be put into effect as to entitle them to maintain this proceeding. They are manufacturers of lumber, having mills at Chattanooga, constructed and equipped at large expense, to whose operation, as they allege, logs purchased along the line of the railroad company in Alabama and Mississippi is the chief and indispensable source of supply; and, as they allege, the increased rates on these logs fixed by the orders of the Commission has caused the plant of one of the petitioners to be wholly abandoned, that of another to be shut down, and those of the two others to be greatly limited in their operations. Under the allegations of the petition they are directly affected in the conduct of their business by the orders of the Commission; and, if the rates fixed by these orders are unreasonably high, have suffered and will suffer great pecuniary damage.

We cannot sustain the contention made by the Commission, in which the United States does not join, that merely because the orders made by the Commission do not directly affect the petitioners' own property or its use, and because they have no vested interest in any rates filed by a carrier with the Commission, they have no such pecuniary interest

or property right involved under the orders in question as to give them a standing in court for the purpose of obtaining injunctive relief.

In Merchants' Association v. United States (D. C.) 231 Fed. 292, 294 (three judges), it was held, in an opinion by Morrow, Circuit Judge, that traffic associations, formed for the purpose of representing merchants in traffic matters, were entitled to bring a petition in equity to enjoin the enforcement of orders of the Commission, made upon its own initiative, suspending the long and short haul clause of the Interstate Commerce Act in reference to certain rates. A fortiori, shippers themselves, having been parties to the proceedings before the Commission in which such orders were made, would have been entitled to maintain such suit in equity. And it is to be noted that in this Merchants' Association Case the motion made by the United States to dismiss the petition was based upon the specific ground that the traffic association did not bring the suit either "as a common carrier or as shippers," and had no such interest in the orders made by the Commission as to enable them to maintain the suit; the government itself thus inferentially recognizing that the shippers themselves would have had such interest, just as in the instant case the right of, the petitioners to bring this proceeding is not denied by the government. So in Galveston Chamber of Commerce v. Railroad Co. (Tex. Civ. App.) 137 S. W. 737, the right of a Chamber of Commerce and of individual shippers to bring a bill in equity to restrain the state Railroad Commission from enforcing a rate-making order on the ground of discrimination was not questioned either by the Commission, counsel, or the court.

While recognizing fully the general doctrine of Railroad Co. v. Ellerman, 105 U. S. 166, 26 Sup. Ct. 1015, In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092, and other cases upon which the Commission relies in argument, that a plaintiff in equity having no pecuniary or property interest in the subject-matter of the litigation is not entitled to injunctive relief, we find nothing in these decisions constraining us to conclude that the interest of a shipper in the rate which he is required to pay for the transportation of his property in the necessary conduct of his business is not such a direct pecuniary interest and property right as to give him the necessary standing in a court of equity for its protection. In United States v. Mich. Cent. Railroad (C. C.) 122 Fed. 544, 545, in which it was held that a suit in equity could be maintained at the instance of the government to restrain interstate carriers from discrimination in rates, after a preliminary investigation and finding by the Commission on the question of the unlawful discrimination, the court said:

"The Interstate Commerce Act confers upon each citizen engaged in productive industry * * * the substantive right of having his product transported by the common carriers of the country at rates equal to the rates obtained by his competitor. This right of equal treatment at the hands of the common carriers is as much a right of property, and affects as directly his interest in property, as any other right of property that he may have under the law, statutory or common. To enforce such right, there must be, somewhere in our system of jurisprudence, the remedy found essential. If an action at law for damages is inadequate, a remedy in equity must exist. The jurisprudence of the country does not leave him remediless."

And so we are of opinion that the right of a shipper to have his property carried at a reasonable rate in the transaction of his business is a right of property, that to enforce such right our system of jurisprudence does not leave him remediless, and that where an action at law is inadequate a remedy in equity must and does exist.

The common-law right of a shipper to have his goods carried at a reasonable rate of compensation is recognized in the provision of section 1 of the Interstate Commerce Act, as amended by section 1 of the Hepburn Act (34 Stat. 584), that all charges made by common carriers for services rendered in interstate transportation "shall be just and reasonable." A shipper, unless inhibited by statute, may "always invoke the aid of the courts" to protect himself against an unreasonable exaction of charges. Chicago Railway v. Osborne (8th Cir.) 52 Fed. 912, 914, 3 C. C. A. 347 (Brewer, Cir. Justice). Thus he is entitled at common law to his action in damages for the exaction of an unreasonable rate. Texas Railway v. Abilene Oil Co., 204 U. S. 426, 436, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075. This common-law remedy is, however, so abrogated by the Interstate Commerce Act that a shipper cannot now, consistently with its provisions, maintain his common-law action for excessive rates exacted on interstate shipments, where such rates have been duly published by the carrier and not found by the company to be unreasonable; and in such case a shipper must "primarily invoke redress' through the * * * Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable." Texas Ry. v. Abilene Oil Co., 204 U. S. at page 448, 27 Sup. Ct. 358, 51 L. Ed. 553, 9 Ann. Cas. 1075 (1907).

It results that where an interstate rate published by a carrier has been determined by order of the Commission, in the exercise of its original jurisdiction, to be reasonable, the shipper who is compelled to pay these rates in carrying on his business is utterly remediless, whatever error may have been committed, unless he may in such case seek in the courts injunctive relief against the order of the Commission. Admittedly, however, an interstate carrier, aggrieved by an order of the Commission requiring the establishment of rates that are unreasonably low, may seek injunctive relief in the courts; and a careful consideration of the statutes in reference to interstate commerce convinces us that Congress not only did not intend to deny a corresponding remedy to shippers when the rates fixed by an order of the Commission are unreasonably high, but, on the contrary, affirmatively intended to extend such remedy to them.

By section 13 of the Interstate Commerce Act, 24 Stat. supra, at page 383, it was originally provided, in general terms:

"That any person * * * complaining of anything done or omitted to be done by a common carrier subject, to the provisions of this Act, in contravention of the provisions thereof, may apply to said Commission by petition."

And that:

"No complaint shall be at any time dismissed because of the absence of direct damage to the complainant."

By section 12 of the Commerce Court Act (Act June 18, 1910, c. 309, 36 Stat. 539, 552 [Comp. St. 1913, § 8583]), section 15 of the Interstate Commerce Act was amended so as to provide that, whenever there should be filed with the Commission any new schedule of rates, the Commission should be authorized, "either upon complaint or upon its own initiative," to enter upon a hearing concerning the propriety of such rate, and to make such order in reference thereto as would be proper in a proceeding initiated after the rate had become effective. We think it clear that this provision, enacted after the decision in the Abilene Oil Company Case, was intended to so broaden the right of shippers therein declared as not to limit their remedy against any unreasonable rate to claims for reparation after the rate had gone into effect, but to permit shippers who would in the conduct of their business be directly affected by a proposed new rate to appear as complainants before the Commission for the purpose of obtaining an order preventing such rate from being put into effect. And we necessarily conclude that the present petitioners by filing their petition before the Commission complaining of the new rate which the railroad company proposed to establish, acquired a legal status before the Commission as parties in interest to the proceedings had upon such complaint.

By section 1 of the Commerce Court Act (36 Stat. p. 539) there was vested in the Commerce Court the former jurisdiction of the Circuit Courts of the United States in cases brought to enjoin or annul any order of the Commission (Jud. Code [Act March 3, 1911, c. 231] § 207, 36 Stat. 1148 [Comp. St. 1913, § 993]). By section 4 it was provided that in all cases in the Commerce Court the Commission "and any party or parties in interest to the proceeding before the Commission, in which an order or requirement is made, may appear as parties thereto of their own motion and as of right, * * * in any suit wherein is involved the validity of such order or requirement * * * and the interest of such party"; that "committees, associations, corporations, firms, and individuals who are interested in the controversy or question before the * * * Commission, or in any suit which may be, brought by any one" under the terms of the Interstate Commerce Act or its amendments, relating to action of the Commission, may "intervene in said suit or proceedings at any time after the institution thereof" (Jud. Code, § 212 [1]); and that "complainants before the * * * Commission interested in a case shall have the right to appear and be made parties to the case" (Jud. Code, § 213 [2]). And by Act Oct. 22, 1913, 38 Stat. p. 219, the Commerce Court was abolished and its jurisdiction transferred to the several District Courts of the United States.

Construing the foregoing provisions of the Commerce Court Act in their entirety, we are of opinion that it was intended that any person who had acquired a standing as a party in interest in proceedings before the Commission should have the right to appear as a party in any suit brought in the court involving the validity of an order therein made by the Commission, as distinguished from the mere right of intervention given to other persons who were not parties in interest.

[1] Comp. St. 1913, § 1005.          [2] Comp. St. 1913, § 1006.

before the Commission, but merely "interested in the controversy or question," and that the right thus given to a party in interest before the Commission is not limited to his appearance as an intervener in such proceedings as may be instituted by other parties in interest before the Commission, but includes the right to appear in the court as a party plaintiff in proceedings which he himself may bring to test the validity of the order of the Commission. And we hence conclude that, under the statutory provisions above quoted, the petitioners herein, having duly appeared before the Commission as complainants against the rates proposed to be established under the new schedule filed by the railroad company, not only became parties in interest before the Commission in the proceedings had upon such complaint, but that as such parties in interest in such proceedings they are now entitled, as of right, to appear as parties plaintiff under their petition in this court in proceedings to set aside the order of the Commission.

[5] 4. The petition is not open to the objection that it seeks to have the court take the place of the Commission as a rate-making body, and require the Commission to order the railroad company to establish in lieu of the new rates now in effect such other and lower rates as may be found to be reasonable by the court. This objection misconstrues the scope of the petition, which merely prays that the orders of the Commission, affirmatively requiring the carrier to establish the new rates and maintain the same for two years, be annulled and their enforcement enjoined, and contains no prayer that the court itself shall fix such other rates as it may determine to be reasonable and require them to be put into effect. What would be the exact status if the court should sustain the prayer of the petition and annul and enjoin the enforcement of these orders need not now be determined.

[6] 5. Nor can the petition be properly dismissed upon the ground that the rates in question have already been established and gone into effect. This objection does not go to the jurisdiction of the court, but merely to the extent of the relief obtainable by the petitioners. And even assuming that the court would be without authority to annul and enjoin the enforcement of such portion of the orders as has already been complied with, namely, that which directs the establishment of the new rates, this would clearly not prevent the court from granting part of the relief prayed, namely, the annulling and enjoining of so much of the orders as required the railroad company to maintain the established rates for two years from September 15, 1915.

[7] 6. On the merits of the application for an interlocutory injunction the petitioners earnestly insist that the conclusions of the Commission as to the reasonableness of the rates in question are (a) contrary to the evidence and without evidence to support them, and (b) based upon a mistake of law; and that the orders based on such conclusions should hence be annulled and enjoined. It is well settled that, on the one hand, a conclusion of the Commission upon a question of fact, such as the reasonableness of a rate, whose correctness depends wholly upon a consideration of the weight to be given the evidence before it, will not be reviewed by the court; while, on the other

hand, a conclusion which plainly involves, under the undisputed facts, an error of law, or which is supported by no substantial evidence, will be so reviewed. Pennsylvania Co. v. United States, 236 U. S. 351, 361, 35 Sup. Ct. 370, 59 L. Ed. 616; Louisville Railroad v. United States (D. C.) 216 Fed. 672, 679 (three judges), and cases therein cited. An order wholly unsustained by proof is reviewable, as being equivalent to an order in excess of the powers of the Commission. United States v. Louisville Railroad, 235 U. S. 314, 321, 35 Sup. Ct. 113, 59 L. Ed. 245; United States v. Louisville Railroad (D. C.) 225 Fed. 571, 579 (three judges).

[8] (a) On the question of the alleged want of evidence to support the conclusions of the Commission, the contention of the petitioners, based on their view of "the conditions established by the undisputed evidence," is, as summarized in their brief, substantially as follows: That the original schedule of rates, established by the railroad company itself, was presumably sufficiently remunerative at the time it was made; that having been continued for 13 years, without objection or complaint, until large investments have been made on the strength of them, this presumption of reasonableness is strengthened; that there was no effort to show any change of conditions which would justify any advance in the rates, or render them less reasonable than they were when first established; that it is a matter of common knowledge that the tendency is continually toward a reduction in freight rates, due to the increasing density of the traffic as the country develops, and the greater economy in moving it on account of the increase in size of engines and cars; that the steady increase in the earnings of the railroad company and its sound financial condition shows that these conditions have operated to its benefit and advantage; that the earnings from the log traffic have yielded their full proportionate share, or more, of all of the revenues of the railroad company; and that "in the face of this affirmative and uncontradicted evidence * * * the Commission exceeded its power when it required this raise of rates merely because it appears that on some other roads log rates are in force which are higher than the old rates on the line of this respondent."

The Commission, however, had before it a large amount of evidence, both oral and documentary, including exhibits showing the rates charged by other carriers for hauling logs to Chattanooga and for similar distances into Nashville and Memphis, Tenn., and Ohio river points, from which the Commission found that the new rates compared "favorably with the rates of other roads into Chattanooga and to the other points taken for comparisons where the traffic conditions appear to be similar"; evidence as to the due ratio between the rates on logs and those on lumber; evidence as to the comparatively slight participation of the railroad company in the outbound haul of lumber from Chattanooga, and the large proportion of the equipment used in hauling logs into Chattanooga which has to be returned empty; a comparison of the new rates on logs with those on other low-rated commodities; evidence as to certain inconsistencies in former rates as between different stations; and other evidence which at least tended to show that the earlier log rates had been originally established in order to encour-

age the industry. The Commission, after careful consideration of all of this evidence, as shown by its original and supplemental reports, reached the conclusion that the new rates which it directed should be put into effect were reasonable. And while the findings of the Commission are criticized by the petitioners in various respects, it being insisted, for example, that the log rates of other railroads used for comparison are in various respects misleading, we nevertheless conclude, after careful consideration, without setting forth the evidence in detail, that, as said in Interstate Commission v. Union Pacific Railroad, 222 U. S. 541, 550, 32 Sup. Ct. 108, 56 L. Ed. 308, there was in the mass of facts in evidence before the Commission "that out of which experts could have named a rate"; and that the conclusion of the Commission on this evidence that the new rate was reasonable, to which, as held in Illinois Central Railroad v. Interstate Commission, 206 U. S. 441, 454, 27 Sup. Ct. 700, 704 (51 L. Ed. 1128), is to be ascribed "the strength due to the judgments of a tribunal appointed by law and informed by experience," cannot be properly held to be supported by no substantial evidence and wholly unsustained by proof, or contrary to the indisputable character of the evidence, but is, on the contrary, supported by substantial evidence, and hence, as a finding on the facts, is now conclusive. Interstate Commission v. Union Pacific Railroad, 222 U. S. at page 550, 32 Sup. Ct. 108, 56 L. Ed. 308. And see Atchison Railway v. United States, 232 U. S. 199, 221, 34 Sup. Ct. 291, 58 L. Ed. 568; Loomis v. Lehigh Valley Railroad, 240 U. S. 43, 50, 36 Sup. Ct. 228, 60 L. Ed. 517.

[9] (b) The petitioners furthermore contend, in effect, that the conclusion of the Commission as to the reasonableness of the new rate is not now conclusive, because plainly involving an error of law, in that, it is insisted, the Commission "seem to have given no force or consideration whatever to the disastrous effect on the business of the protestants of the increase in rates which they have directed." It is the duty of the Commission, in passing on the reasonableness of a rate, to consider the conditions affecting the welfare both of the shippers and the carriers. Texas Railroad v. Interstate Commission, 162 U. S. 197, 219, 16 Sup. Ct. 666, 40 L. Ed. 940. However, the carrier is not to be denied the right to change from an unreasonably low rate, which has formerly prevailed, to a just and reasonable charge for the future, merely because of the injurious consequences which would arise to shippers from a change in the rate. Southern Pacific Co. v. Interstate Commission, 219 U. S. 433, 449, 31 Sup. Ct. 288, 55 L. Ed. 283; Atchison Railroad v. Interstate Commission (Com. Ct.) 190 Fed. 591, 594, and 203 Fed. 56, affirmed in per curiam opinion in Atchison Ry. v. United States, 231 U. S. 736, 34 Sup. Ct. 316, 58 L. Ed. 460; and Rates on Crushed Stone, 29 I. C. C. 136. The petitioners' contention in this matter is, we find, based on a misconception of the action of the Commission, which, as shown both by its original and supplemental reports, gave full and careful consideration to the contention of the petitioners in regard to the effect of the increased rates on their investments, but held, in effect, after such consideration and in accordance with the rules above stated, that the mere fact that the change in

rates would tend to impair or destroy the value of the investments made in expectation of their continuance did not constitute a ground for denying to the carriers the right to charge new rates which on all the evidence were found to be just and reasonable. 30 I. C. C. at page 39, and 35 I. C. C. at page 168.

We find no error of law in the action of the Commission in this regard. And we may add, in this connection, that there was substantial evidence supporting the statement made in the supplemental report of the Commission that, while it was shown that shipments of logs to Chattanooga had materially decreased since the new rates became effective, and that certain mills had closed and others were not running on full time, it also appeared that throughout the south the lumber industry had suffered severely as a result of the European War and from other causes, and that the depression at Chattanooga was perhaps no greater than at Memphis and other lumber manufacturing centers. 35 I. C. C. at page 168.

7. Since, therefore, for the reasons above stated, the conclusion of the Commission as to the reasonableness of the new rate must now be held conclusive, it results that the motion of the petitioners for an interlocutory injunction, restraining the enforcement of the orders based thereon, must now be denied. And as there is exhibited as a part of the petition all of the evidence taken before the Commission, we are, for like reasons, constrained to conclude that the petition shows on its face no equity or ground for permanently annulling and enjoining the enforcement of the orders of the Commission, which is the ultimate relief sought, and are hence of the opinion that the motions of the United States and of the Commission to dismiss the petition should, in so far as based upon the want of equity on the face of the petition, be granted. Louisville Railroad v. United States (D. C.) 227 Fed. at page 272.

A decree will accordingly be entered, denying the motion of the petitioners for an interlocutory injunction, sustaining the motions of the United States and of the Commission, and dismissing the petition for want of equity on its face, with costs.