**NASHVILLE GRAIN EXCH.** et al. v. **UNITED STATES** (INTERSTATE COMMERCE COMMISSION, Intervener).

**LOUISVILLE & N. R. CO.** et al. v. **UNITED STATES** (INTERSTATE COMMERCE COMMISSION et al., Interveners).

(Commerce Court.   October 24, 1911.)

Nos. 46, 47.

**1. COMMERCE (§ 96*)—INTERSTATE COMMERCE COMMISSION—ORDERS—INJUNCTION—COMMERCE COURT—PARTIES—INTERVENTION.**

Under the broad provisions of the last proviso of section 5 of Act June 18, 1910, c. 309 (36 Stat. 543, c. 309), creating the Commerce Court, "that communities, associations, corporations, firms and individuals who are interested in the controversy or question before the Interstate Commerce Commission, or in any suit which may be brought by any one under the terms of this act, relating to action of the Interstate Commerce Commission, may intervene in said suit or proceeding at any time after the institution thereof," an incorporated grain exchange or a board of trade of a city, most or all of whose numbers are engaged in business which will be directly affected by an order of the Commission, is interested in the question involved, and is entitled to intervene in a suit in the Commerce Court brought to enjoin the enforcement of such order.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 96.*]

**2. COMMERCE (§ 96*)—SUIT TO ENJOIN ENFORCEMENT OF ORDER OF INTERSTATE COMMERCE COMMISSION—PRELIMINARY INJUNCTION.**

The Commerce Court, in the exercise of the legal discretion vested in it by section 3 of Act June 18, 1910 (36 Stat. 542, c. 309), creating such court, will grant a preliminary injunction suspending the operation of an order of the Interstate Commerce Commission, where it is shown that its enforcement will result in the destruction of the business of a large class of shippers in a city and a large loss to them, while the damage which will result to others from its suspension will be small in comparison.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 96.*]

**3. COMMERCE (§ 96*)—ORDERS OF INTERSTATE COMMERCE COMMISSION—INJUNCTION—"DISCRETION."**

The word "discretion," as used in section 3 of Act June 18, 1910 (36 Stat. 542, c. 309), creating the Commerce Court, means a legal discretion, a discretion controlled and limited by sound principles of law applied to the facts in each particular case.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 96.*

For other definitions, see Words and Phrases, vol. 3, pp. 2095–2099.]

In Equity.   Suits by the Nashville Grain Exchange and the Nashville Board of Trade against the United States, in which the Interstate Commerce Commission intervened, and by the Louisville & Nashville Railroad Company and the Nashville, Chattanooga & St. Louis Railway against the United States, in which the Interstate Commerce Commission, W. S. Duncan & Co., and others intervened.   On motion for temporary injunction by petitioners, and motions to dismiss by respondent and interveners.   Motion to dismiss denied, and cases consolidated.   Motion for injunction granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

K. T. McConnico (Lee Douglas on the brief), R. Walton Moore, and Albert S. Brandeis, for petitioners.

Blackburn Esterline, Sp. Asst. Atty. Gen. (James A. Fowler, Asst. Atty. Gen., on the brief), for the United States.

Charles W. Needham, for Interstate Commerce Commission.

William A. Wimbish, for intervening shippers.

Before KNAPP, Presiding Judge, and ARCHBALD, CARLAND, HUNT, and MACK, Associate Judges.

CARLAND, Judge.   The above cases are before the court on motion of the petitioners in each case for a temporary injunction, and on the joint motion of the United States and the Interstate Commerce Commission to dismiss the petition in case No. 46, and on motion of W. S. Duncan & Co. and others to dismiss the petition in case No. 47.

The joint motion of the United States and the Interstate Commerce Commission to dismiss the petition in case No. 46 is based upon the alleged want of capacity in the petitioners therein to maintain an original petition in this court for the purpose of setting aside the order of the Interstate Commerce Commission of which complaint is made. As counsel for petitioners in case No. 46 have requested that, if in the opinion of the court there should be doubt as to the right of said petitioners to maintain said petition, then that said petitioners be granted leave to have said petition treated as a petition in intervention in support of the petition filed in case No. 47, we do not deem it necessary to pass upon the motion to dismiss, but under and by virtue of the power conferred upon courts of the United States by section 921, R. S. U. S. (U. S. Comp. St. 1901, p. 685), will consolidate said cases Nos. 46 and 47 and order that the petition in case No. 46 stand as a complaint in intervention in support of the petition filed in case No. 47.

[1] It is insisted, however, by counsel for the United States and the Interstate Commerce Commission, that the petitioners in case No. 46 have no such interest in the controversy as entitles them to intervene in case No. 47.   We think this contention cannot be sustained. The last proviso of section 5 of the act creating this court (Act June 18, 1910, c. 309, 36 Stat. 543) provides as follows:

"Provided further, that communities, associations, corporations, firms, and individuals who are interested in the controversy or question before the Interstate Commerce Commission, or in any suit which may be brought by any one under the terms of this act or the acts of which it is amendatory or which are amendatory of it, relating to action of the Interstate Commerce Commission, may intervene in said suit or proceedings at any time after the institution thereof."

The Nashville Grain Exchange is a corporation organized under the laws of Tennessee, and is an association of the grain dealers of the city of Nashville in said state, including in its membership practically all of the dealers in grain, grain products, and hay in said city. The Nashville Board of Trade is a corporation organized under the laws of Tennessee, and is the leading commercial organization of the city of Nashville, representing in an organized way the bulk of the substantial business interests of said city.

Language could not very well be made broader than the terms of the statute. It not only permits communities, associations, corporations, firms, and individuals who are interested in the controversy to intervene, but such communities, associations, corporations, firms, and individuals, if interested in the question before the commission, or in any suit which may be brought by any one under the provisions of the act creating this court, may intervene in any suit or proceeding at any time after the institution thereof. While there may be room for argument as to the character of the interest which such communities, associations, corporations, firms, and individuals should have in the controversy in any suit in this court, there certainly can be no question but that the petitioners in case No. 46 are interested in the question to be decided in case No. 47. It has sometimes been held that parties who were merely interested in the question to be decided in a lawsuit were not interested within the terms of a statute which provided that parties in interest might intervene, but Congress, in the language of the law above quoted, was careful to make the law broad enough to include, not only those who might be directly interested in the controversy, but those who were interested in the question to be decided.

The mandatory part of the order of the Interstate Commerce Commission sought to be annulled in these proceedings is as follows:

"It is ordered, that the above-named defendants be, and they severally are hereby, notified and required to cease and desist, on or before the 1st day of August, 1911 (postponed by the Commission to November 1, 1911), and for a period of at least two years thereafter abstain from granting to Nashville and to the dealers in grain, grain products, and hay located at Nashville, the privilege of so rebilling or reshipping said products from Nashville so long as said defendants refuse and refrain from granting the said privilege of rebilling or reshipping grain, grain products, and hay to Atlanta, Columbus, Macon, Cordele, Albany, Valdosta, Dublin, Montezuma, Rome, and Athens, or either of them, and to the dealers in said commodities located at said cities."

It is shown by the petitions and affidavits in these cases that the enforcement of this order will result in the destruction of the existing business of grain dealers at Nashville, and said grain dealers are members of the Nashville Grain Exchange and the Nashville Board of Trade.

[2] So far as the motion for the temporary injunction is concerned, we are of opinion that the same should be granted in case No. 47. Section 3 of the act creating this court provides as follows:

"That suits to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission shall be brought in the Commerce Court against the United States. The pendency of such suit shall not of itself stay or suspend the operation of the order of the Interstate Commerce Commission; but the Commerce Court, in its discretion, may restrain or suspend, in whole or in part, the operation of the Commission's order, pending the final hearing and determination of the suit."

[3] The word "discretion," used in the law, of course, means a legal discretion, a discretion controlled and limited by sound principles of law applied to the facts in each particular case. The principles which govern courts of equity in granting temporary injunctions are well known to the profession and need not be stated here. One

of those principles, however, may be stated as follows: Where the case in which the temporary writ of injunction is asked presents questions of grave importance and difficulty, and it appears from the pleadings and affidavits presented upon the hearing for the temporary writ that great damage will result to the complainant if the writ is not granted and he shall finally be successful in the litigation, and, on the other hand, that the granting of the writ will not cause serious damage to the defendant as compared with the damage which would result to the complainant if the same were not granted, a court of equity will unhesitatingly, in order to maintain the present status, issue a temporary writ of injunction.

In this case the pleadings and affidavits satisfy the court that the petitioners will be greatly damaged if the temporary writ is not granted and they shall finally be successful in the litigation. On the other hand, we are satisfied that, in comparison with the damage which would thus be suffered by the petitioners, the damage which will result to the respondent and interveners if the temporary writ is granted and they shall be successful in the litigation will be small. We fully appreciate the grave and responsible duty imposed upon this court by law in reference to the granting of injunctions restraining or suspending the orders of the Interstate Commerce Commission, and such cases will always be approached and considered with the care and consideration which the discharge of such duty requires.. In view of the principles which should guide all courts of equity in granting temporary writs of injunction, and in view of the great responsibility above mentioned, we think the pleadings and affidavits presented to us on this hearing present a clear case for the granting of an order suspending the enforcement of the order complained of until the further order of the court.

In regard to the motion to dismiss made by W. S. Duncan & Co. and others in case No. 47, it appears that the motion strikes at the foundation of the case. A consideration thereof will be deferred, therefore, until the case is heard upon the merits.