## MILLER v. UNITED STATES.

### (District Court, S. D. New York. May 20, 1921.)

1. **Railroads ⚷⟳150—Interstate Commerce Commission's order approving issuance of securities not subject to attack by stockholder.**

   Owner of stocks or bonds of railroad cannot, under Commerce Court Act and Urgent Deficiencies Act (Comp. St. §§ 992, 994), petition to enjoin, set aside, annul, or suspend order of Interstate Commerce Commission approving issuance of new securities by the railroad under Railroad Bill, § 268(a), since under section 272(6) only authorities of the states through which the carrier passes can object to issuance of new securities.

2. **Railroads ⚷⟳150—Investigation required of Interstate Commerce Commission approving issuance of securities.**

   The Interstate Commerce Commission, on application of railroad for authority to issue securities, need make only such investigation as the Commission considers necessary, which investigation may be informal.

3. **Railroads ⚷⟳150—Interstate Commerce Commission approving issuance of securities need not pass on reorganization plan.**

   The Interstate Commerce Commission, on application by newly organized railroad for authority to issue securities to purchase property of old railroad at foreclosure sale, is not concerned with the reorganization plan, but will pass merely upon the propriety of exchanging new securities for old property, since, if the property is adequate, the Commission need not go into the validity of its acquisition by the new company.

In Equity. Petition by E. H. Miller to enjoin, set aside, annul, or suspend an order of the Interstate Commerce Commission approving issuance of new securities by the Chicago & Eastern Illinois Railroad Company. On motion of the United States to dismiss petition. Motion sustained.

Suit under Commerce Court Act (36 Stat. 539) and Urgent Deficiencies Act October 22, 1913 (38 Stat. 219; Comp. St. §§ 992, 994) to enjoin, set aside, annul, or suspend order of Interstate Commerce Commission, February 3, 1921, approving the issuance of new securities by Chicago & Eastern Illinois Railroad Company. Hearing on motion of United States to dismiss the petition. Motion sustained.

The petitioner in this proceeding asks this court "to set aside and annul an order granted by the Interstate Commerce Commission on or about February 3, 1921, approving the issuance of new securities by the Chicago & Eastern Illinois Railroad Company. * * *" The only allegation of any interest which the petitioner has in the proceeding is his statement in the petition that "your petitioner represents, in his application, an interest of nearly $100,000, in the stock of the Chicago & Eastern Illinois Railroad Company."

The original Chicago & Eastern Illinois Railroad Company is in the hands of receivers who were appointed in May, 1913.

The petition sets forth that the original application to the Commission for the right to issue securities by a corporation about to be formed, but really previously incorporated, was signed by Joseph P. Cotton, counsel for the committee protecting the general mortgage bonds of the old company, the Chicago & Eastern Illinois Railroad Company, and by George Wellwood Murray,

counsel for the committee protecting the preferred and common stock of the railroad company. The petition goes on to state that under date of January 20, 1921, there was filed with the Commission a petition by the railway company for leave to issue securities in order to purchase property belonging to the old railroad company at foreclosure sale of some of the mortgages securing certain of the bonds above mentioned. This foreclosure suit is pending in the federal court in Chicago. The petition of the new railway company is stated to have adopted as its own the prior application of Messrs. Cotton and Murray.

A deposit agreement was made for the protection of owners of preferred and common stock, dated May 28, 1913, one clause of which is as follows:

"In order to comply with the rules of the committee on stock list of the New York Stock Exchange, a period of five years is hereby specified as the period within which depositors will be entitled either to receive the new securities resulting from the plan for reorganization or readjustment of the railroad company or its affairs, or to the return of the deposited securities upon the compliance with the terms of this agreement. * * *"

A deposit agreement relating to the refunding and improvements bonds of the old company, bearing date March 25, 1914, was likewise made. This contained no provision as to the withdrawal of the bonds after five years, and vested the committee named in the agreement with the legal title to all the bonds deposited thereunder.

A further deposit agreement, bearing date March 15, 1915, and covering certain other indebtedness of the insolvent railroad, was also made. This last agreement provided:

"The period of five years is specified as the period within which the depositors will be entitled to the return of the securities which they have deposited hereunder, or the receipt of new securities on reorganization or readjustment."

Certain of the bonds under the last-mentioned deposit agreement are stated by the petitioner to be first lien bonds issued to pay for coal lands. The petition goes on to say that the coal property was ordered sold by the United States District Court in Chicago, but that the foreclosure was not completed as to the Indiana property until December 18, 1918, and as to the Illinois property until March 19, 1919. Meanwhile, the petition alleges, the stockholders' deposit agreement had expired, and the deposit agreement covering the coal bonds had also expired. It further states that the expiration of the latter agreement was "before the committee announced the purchase of the coal properties" and the transfer of the title to the present nominal holding company, the Indiana & Illinois Coal Corporation. * * *" The charge is made that the equity in these coal lands has been lost to the holders of the stock and securities other than the coal bonds deposited with the committee because of this sale.

It is apparently the case (although the papers do not set it forth with any degree of clearness) that the coal property will not be, or may not be, turned over to the new railway company while the other assets which are in the hands of the receivers of the Chicago & Eastern Illinois Railroad Company are to be turned over to it upon the issuance of various securities authorized by the Interstate Commerce Commission by its order of the 3d of February, 1921. The petitioner alleges that the proposed transfer is an invasion of the rights of the stockholders and bondholders of the Chicago & Eastern Illinois Railway Company, whom he represents, on either one of two grounds: (1) Because the three committees represented antagonistic interests and were exploiting the coal properties and neglecting to include them in the proposed reorganization; (2) because the deposit agreements covering the stock and coal bonds had expired.

He further alleges that he is seeking, in a suit in the New York Supreme court, to cancel the sale of the coal lands.

The petition then proceeds to ask that the order of the Interstate Commerce Commission be set aside:

(a) Because the Commission did not examine the reorganization plan before making an order authorizing the issue of securities by the new company which proposes to purchase at the foreclosure sale.

(b) Because the application to the Interstate Commerce Commission, signed by Joseph P. Cotton and George Wellwood Murray, was legally invalid (apparently on account of the alleged expiration of the deposit agreement), and could not be cured by the filing of a second application by the new company.

(c) Because the Interstate Commerce Commission, if they had learned that it was proposed to disregard the coal lands, might have, and apparently it is claimed should have, insisted upon a modification of the schedules of securities to be issued by the new company.

By an order of Judge Mack, copies of the petition were served upon the secretary of the Interstate Commerce Commission, and the Attorney General of the United States, and notice was given also to George C. Van Tuyl, Jr., Joseph P. Cotton, George Wellwood Murray, and W. H. Lyford, of the hearing on the present petition.

The United States attorney, appearing on behalf of the respondent, moves to dismiss the petition upon substantially three grounds: (1) That the petitioner shows no interest entitling him to maintain the petition; (2) that no order of the Interstate Commerce Commission is involved which is subject to the injunction process of this court; (3) that no cause of action against the United States is set forth.

Blackburn Esterline, Sp. Asst. Atty. Gen., and Francis G. Caffey, U. S. Atty., F. A. McGurk, Asst. U. S. Atty., and Joseph P. Cotton, all of New York City, for the motion.

E. H. Miller, of New York City, opposed.

Before HOUGH, Circuit Judge, and LEARNED HAND and AUGUSTUS N. HAND, District Judges.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). The first objection to the foregoing petition is that Mr. Miller comes into court neither as the owner nor holder of any stock or bonds of the Chicago & Eastern Illinois Railroad Company, and if he were such a stockholder or bondholder, there appears to be no provision of law which would entitle him to sue.

[1] Assuming for the purposes of argument that the petitioner is the owner of stock or bonds of the Chicago & Eastern Illinois Railroad Company (a fact not alleged in the petition, and disclaimed at the time of argument), the petition would under such circumstances have to be denied.

Section 268 (a) of the Railroad Bill, which regulates the issue of security by common carrier, so far as relevant, provides merely that the Interstate Commerce Commission may authorize a carrier to issue new shares or bonds. This it must do, section 272 (6), upon notice to the Governor of each state through which the carrier passes. The state authorities may oppose, and the Commission may hold hearings if it sees fit. Apparently no one else can object. The purpose of these provisions of law is only to prevent overissues of securities, and the Commission has no jurisdiction to determine whether the property received will belong to the carrier when received, or whether there are liens upon it. All the Commission does is to say that the securities may be issued for that property, and nobody interested in the property is or can be affected by the order, except as he becomes a holder of the new securities.

Here, the new corporation, the railway company, has applied for, and been given, leave to issue certain stock and bonds. It is of no mo-

277 F.—7

ment to the petitioner here whether the securities are authorized or not until he gets them, and if he does so either voluntarily, or because compelled to, his interest will be in sustaining the order. If he has interests in the property to be transferred, he may wish to prevent the transfer; but his time to object is when some court, in this case the United States District Court in Chicago, directs that his property be delivered to the railway company in exchange for the new securities. The order of the Interstate Commerce Commission does not, and could not, make that direction. It only puts the railway company in a position where, if it succeeds in getting the proposed consideration, its own bonds and shares will be valid, which they could not otherwise be.

[2, 3] So much for the basis of the application. As for the alleged defect in the powers of the committees, it is irrelevant because the railway company's application is enough. The investigation required of the Commission may be informal. Whatever they think necessary, and no more. Even if it be without seeing the reorganization plan, there would be no irregularity. The Commission does not pass upon that, but upon the propriety of exchanging new securities for old property; if the property be adequate, it is unnecessary to go into the validity of its acquisition by the railway company.

In view of the foregoing conclusions, it is unnecessary to discuss whether the provisions limiting the operation of the deposit agreements to a term of five years from their respective dates were such as to deprive the committees of all power to deal with the securities. Apparently the petitioner, after the five years had expired, represented depositors before the Commission, and no request has been made for the return of the securities. If the depositors object to the plan of reorganization, there is nothing to prevent them from withdrawing their securities. If they wish to participate in it in either its present or an amended form, the objection based upon the expiration of the five-year period seems groundless.

The contention that the Interstate Commerce Commission, if it had learned that it was proposed to disregard the coal lands, should have insisted upon a modification of the plan for the transfer to the railway company and the issue of new securities, is met by what we have already said as to the powers of the Commission. The failure of the Indiana & Illinois Coal Corporation, which holds the legal title to the coal lands, to turn over these lands to the railway company, if they really belong to the latter, is a right which can only be asserted by the latter company. On the other hand, if that company holds the title as trustee for the old railroad company or the security holders, of whom the petitioner represents a part, it is manifest that relief must be sought against it in some appropriate forum. No relief can be given in such a proceeding as the present one.

The motion of the United States attorney is granted, and the petition dismissed.