**STATE OF TENNESSEE et al. v. UNITED STATES et al.**

(District Court, M. D. Tennessee, Nashville Division. March, 1922.)

No. 3604.

1. **Commerce ⬅85—Interstate Commerce Commission may fix intrastate rate, when discrimination and prejudice found.**

    The Interstate Commerce Commission has general power and jurisdiction to fix an intrastate rate, as to which it has found the existence of discrimination and prejudice against interstate commerce.

2. **Commerce ⬅93—State entitled to sue to enjoin enforcement of order denying right to grant preferences to state and municipalities.**

    A state may maintain a bill to enjoin enforcement of an order of the Interstate Commerce Commission forbidding preferences to the state or municipalities, in alleged violation of Interstate Commerce Act, § 22 (Comp. St. § 8595), permitting such preferences, whether an order of the state Railroad and Public Utilities Commission prescribing a reduced rate for the state and municipalities was within its jurisdiction or not, as the order would prevent negotiation with the railroads for preferential treatment.

3. **Commerce ⬅10—State commission authorized, in absence of action by Interstate Commerce Commission to fix reduced intrastate rate for state and municipalities.**

    Under Acts Tenn. 1897, c. 10, §§ 8, 15, 17, and 24, the Tennessee Railroad and Public Utilities Commission, in the absence of action by the Interstate Commerce Commission, had power to prescribe a reduced rate for the transportation of materials for the state or its municipalities.

4. **Commerce ⬅85—Interstate Commerce Commission without jurisdiction to forbid railroads from carrying freight for state or municipalities at reduced rate.**

    Interstate Commerce Act, § 22 (Comp. St. § 8595), providing that nothing therein shall prevent the carriage of property free, or at reduced rates, for the United States, state, or municipal governments, leaves the Interstate Commerce Commission without jurisdiction to forbid the railroads from carrying freight for a state or municipalities at a less price than it charges individuals, notwithstanding sections 2 and 3 (Comp. St. §§ 8564, 8566), forbidding discrimination, or undue or unreasonable preferences.

5. **Carriers ⬅32(1)—Not necessarily improper that preference to state or municipality should be given pursuant to tariff regularly filed and be subject to supervision.**

    Interstate Commerce Act, § 22 (Comp. St. § 8595), providing that nothing therein shall prevent the carriage of property free or at reduced rates for the United States, state, or municipal governments, does not necessarily make it improper that such reduced rates be given pursuant to a tariff regularly filed, or be subject to a measure of regulation or supervision, so that the authorized preference may not be abused, or become a pretext or cover for forbidden discriminations.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Commerce ⬤➡85—Interstate Commerce Commission cannot, in fixing intrastate rates, forbid preference to state or municipality.**

As, under Interstate Commerce Act, § 22 (Comp. St. § 8595), the Interstate Commerce Commission cannot forbid the carrying of freight for a state or municipalities at a less price than it charges individuals, its right to regulate or fix an intrastate rate, whether arising under former laws or under Transportation Act Feb. 28, 1920, is subject to the same limitation.

**7. Carriers ⬤➡32(1)—Right to give preference to state or municipality not governed by fact that state or municipality is shipper or consignee.**

Under Interstate Commerce Act, § 22 (Comp. St. § 8595), permitting carriage of property free or at reduced rates for state or municipal governments, the preference should not be determined by the mere fact that the government is or is not the shipper or consignee, and apparently is permitted only where title passes to the government, or is vested in it at the shipping point.

Suit by the State of Tennessee and another against the United States, wherein certain railway companies and the Interstate Commerce Commission asked and were granted leave to intervene as defendants. Decree for plaintiffs.

Frank M. Thompson, Atty. Gen. of Tennessee, and Wm. H. Swiggart, Jr., Asst. Atty. Gen. of Tennessee, for plaintiffs.

Blackburn Esterline, Sp. Asst. Atty. Gen., of Washington, D. C., for the United States.

P. J. Farrell and J. Carter Fort, both of Washington, D. C., for Interstate Commerce Commission.

Chas. N. Burch, of Memphis, Tenn., for Illinois Cent. R. Co.

Fitzgerald Hall, of Nashville, Tenn., for Nashville, C. & St. L. Ry.

Keeble & Seay, of Nashville, Tenn., for Louisville & N. R. Co.

Before DENISON, Circuit Judge, and SANFORD and ROSS, District Judges.

PER CURIAM. The state of Tennessee, acting both in its own behalf and upon the relation of the Railroad and Public Utilities Commission of Tennessee, joined with that commission in filing a bill of complaint directed against the United States. Since the purpose of the bill was to enjoin the enforcement of an order made by the Interstate Commerce Commission, proceedings were had pursuant to the jurisdiction and practice fixed for the Commerce Court under sections 207, 208, and 209 of the Judicial Code (Comp. St. §§ 993, 997, 996) and the Act of October 22, 1913 (U. S. Comp. St. § 998.) Pursuant to the latter section, a motion for a preliminary injunction regularly came on to be heard before the court as now constituted. On such hearing the Illinois Central Railroad Company and the Nashville, Chattanooga & St. Louis Railway were permitted to intervene and to join in the motion made by the United States to dismiss the bill for lack of equity. The Interstate Commerce Commission also was permitted to and did intervene as a defendant and file its answer. Upon the hearing of the motion to dismiss, it was stated by counsel for the United States and for the intervening railroads that, if the motion to dismiss were overruled, they did not desire to file any answer or further pleadings. It was also

agreed between counsel for the state of Tennessee and counsel for the Interstate Commerce Commission that the latter's answer was not intended to raise any issue of fact, and that the case was appropriate for final hearing on the bill and answer. It was therefore agreed by counsel for all parties that the hearing upon the motion and upon the bill and answer should be treated as a final hearing, and that a final decree might be entered thereon.

Prior to July 29, 1920, the freight rates in Tennessee and adjoining states upon broken stone, cement, and similar road-building materials had been established by the Interstate Commerce Commission and by the State Utilities Commission within their respective fields at the same amounts in each. On the day named the Interstate Commerce Commission, by its order "Ex parte 74," authorized an increase of 25 per cent. in freight rates in this general territory in interstate traffic, and the railroads here intervening adopted this increase. They also filed with the State Commission a tariff making the same proportionate advance in their intrastate rates on all traffic. This was suspended by the State Commission and a hearing had, as a result of which the State Commission approved the increase as to all intrastate traffic, excepting that in road-building materials consigned to the United States, or the state or a municipality therein, or consigned to a contractor for such public use. As to this excepted traffic the railroads were directed to maintain the formerly existing and lower rate.

Thereupon the railroads applied to the Interstate Commerce Commission to have the intrastate rate on this excepted traffic fixed by that Commission, so as to include the same 25 per cent. advance which had been given on all interstate traffic. The railroads alleged that the order of the State Commission, which in effect prescribed for the intrastate traffic in these fields a rate 20 per cent. lower than that which had been established for the interstate shipments of the same materials, was an undue and unjust discrimination against interstate traffic. There was a full hearing before the Interstate Commerce Commission, and it found that in this respect undue preference to persons and localities in Tennessee and unjust discrimination against interstate commerce did result, which should be removed by raising the intrastate rate on these articles shipped to the United States, or to the state or counties or cities, to the same price charged against all shippers or consignees. This order was entered August 30, 1921, and was identified as No. 12132. This is the order the enforcement of which this suit is brought to enjoin.

[1] The general power and jurisdiction of the Interstate Commerce Commission to fix an intrastate rate, as to which it had found the existence of discrimination and prejudice against interstate commerce, were not distinctly challenged by the bill; and since the hearing of the motion herein such jurisdiction and power have been definitely declared by the Supreme Court in the case of R. R. Commission of Wisconsin v. Chicago, B. & Q. R. Co., 257 U. S. 563, 42 Sup. Ct. 232, 66 L. Ed. 371 decided in February, 1921. The only question which is here for decision is one arising under section 22 of the Interstate Commerce Act (Comp. St. § 8595), which so far as it is here material declares:

"That nothing in this act shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, state, or municipal governments."

Whether the effect of this section is to deprive the commission of jurisdiction to make an order preventing discrimination and preference in shipments for these favored parties is the controlling question.

[2] Before reaching the merits, we find that the right of the state to maintain this bill is challenged upon formal grounds. It is said that the state's only right to complain depends upon the order of the State Commission authorizing this preference, and that the order of that commission was without jurisdiction and invalid. We doubt whether the existence of any valid order by the State Commission is essential. The right of the state, either in its own interest as a contingent shipper or in the right of its citizens, to attack an order of the Interstate Commerce Commission affecting rates within the state, seems not to be doubted. North Dakota v. C. & N. W. Ry., 257 U. S. 485, 42 Sup. Ct. 170, 66 L. Ed. 329, January 23, 1922. If there had been no order by the State Commission, and if section 22 has the scope and effect now claimed for it, the state and its municipalities would have the right to negotiate with the railroads for the preferential treatment which section 22 contemplates, and to obtain such discrimination in their favor, if they could. The Interstate Commerce Commission order now attacked denies this right, and forbids the railroads to grant such a preference, if they should wish to. It cannot be controlling that at present they do not so desire; they may change their minds, and this order would stand as a deterrent, both against a change of policy by the railroads generally and against a tendency by any one of them to break away from the existing policy of all.

[3] However, we see no substantial occasion to doubt the jurisdiction and power of the State Commission, when exercised in the lack of any action by the Interstate Commission. The former was created, and its general powers fixed, by chapter 10 of the Acts of 1897 of the Legislature of Tennessee. By section 8 it has power—

"to supervise and fix the rates * * * of railroad freight and passenger tariffs * * * on the different railroads in this state."

Clearly this authority covers the action which has been here taken, unless there is restriction elsewhere in the act. Sections 15 and 17 prohibit any carrier from receiving from any person or corporation a greater or less compensation than it charges any other person or corporation for doing a like service in the transportation of like property under substantially like circumstances and conditions, and from giving any undue or unreasonable preference or advantage to any particular person or corporation or any particular description of traffic.

These provisions are not direct limitations upon the power of the commission to authorize rates which do make discrimination; they rather imply the power of the commission to permit preference or discrimination, if the commission shall decide that it is not undue or unjust, or that the services involved are not under like circumstances and conditions; and their utmost indirect effect is to prohibit the fixing of such discriminatory rates as are in fact undue and unjust. It is dis-

tinctly held in Interstate Commerce Commission v. Baltimore & Ohio Railroad Co., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699, hereafter discussed, that a preferential rate given to the state or municipality is not necessarily unjust or undue, and it follows that sections 15 and 17 do not necessarily deprive the commission of jurisdiction to allow such preferential rates.

Section 24 of the Tennessee act is somewhat similar to section 22 of the Interstate Commerce Act, and provides that the law should not prevent any railroad company from transporting freight at reduced rates for certain specified purposes, among which shipments to a state or municipality are not mentioned. However, we do not think this enumeration of permitted preferences must be taken as exclusive. Each one of the enumerated preferences involves a benefit which, if public at all, is so indirect that the right to make the preference would be doubtful unless it were specifically given. The enumeration should not be construed to exclude a case where the public benefit is as direct as it is when a state or municipality actually pays the freight. As the Supreme Court said of a similar section in 145 U. S. at page 278, 12 Sup. Ct. at page 848 (36 L. Ed. 699), "this section is rather illustrative than exclusive."

If there ever was any doubt of the right of such a commission to fix a rate for a particular service under special conditions at a figure less than the maximum allowed for such general service (Lake Shore Railroad v. Smith, 173 U. S. 684, 693, 19 Sup. Ct. 565, 43 L. Ed. 858), that doubt cannot survive the decision in Pennsylvania Railroad v. Towers, 245 U. S. 6, 17, 38 Sup. Ct. 2, 62 L. Ed. 117, L. R. A. 1918C, 475. Being thus convinced that the state, with or without the support of the State Commission's order, has a right to be heard as to the substance of its complaint, we pass to the meritorious question.

[4] Sections 2 and 3 of the Interstate Commerce Commission Act (Comp. St. §§ 8564, 8566), both before and after the amendment of February 28, 1920 (41 Stat. 479, 480), forbid discrimination in rates between persons with reference to like services in like traffic under similar circumstances and conditions, and forbid undue or unreasonable preference to any person or corporation or in respect to any particular traffic. Section 22, already quoted, expressly permits, not merely reduced rates in favor of particular named persons, but even free carriage. It is the contention of the United States that, when these three sections are read together, section 22 is so modified by sections 2 and 3 that it remains for the Commission to decide whether a preference which might arise under section 22 nevertheless might involve the previously forbidden discrimination or advantage.

We cannot give this construction. In Interstate Commerce Commission v. Baltimore & Ohio Railroad Co., 145 U. S. 263, 278, 12 Sup. Ct. 844, 36 L. Ed. 699, section 22 was under consideration, and it was expressly said that, even in the absence of this section, free or reduced transportation for the property of the United States or states or municipal governments would not necessarily be an unjust discrimination. This is obvious, if for no other reason than because freight charges which are paid by the public must be in one way or another assessed back against the public, including the railroads, in the form of taxes,

as well as because transportation for the public may be exacted in partial consideration for the public rights which the carrier has received. It cannot be thought that transportation furnished to private shippers and that furnished to the public are given under substantially similar circumstances and conditions, and hence it must result that not every discrimination is unjust.

We think it should be inferred that section 22 is a legislative declaration of the fact, recognized in the case just cited, and that its effect is to leave the Commission without jurisdiction to forbid the railroads from carrying freight for the public at a less price than it charges individuals for the same carriage of the same freight; in other words, it excludes this particular traffic from the rate structure which the Commission is authorized to erect and control; in still other words, there is freedom of discrimination.

[5] This conclusion does not necessarily make it improper that such reduced rates should be given only when pursuant to a tariff regularly filed, or should be subject to a measure of regulation and supervision, so that the authorized preference may not be abused, or may not become a pretext or cover for some forbidden discrimination; but the reported actions of the Commission, so far as brought to our attention, do not claim such right of regulation, except that it may fix a maximum. U. S. Alabama Ry. Co., 40 Interst. Com. Com'n R. 405. Of course, this giving of a preference under section 22 is wholly permissive; the section does not confer upon any municipality the right to demand a preference. Nevertheless the existence of the power is of value to the municipalities. They thereby get the right to competition in rates among the carriers for this traffic. The carriers at present do not wish to compete in this particular, but any order which prevents them from so doing whenever they may desire to operates directly to prejudice and destroy the municipal right which is recognized and preserved by section 22.

[6] What has so far been said leads to the conclusion that the Interstate Commerce Commission would be without authority to make an order applicable solely to interstate traffic, and forbidding a preferential rate to a state or a city or county. The right of this Commission to regulate or fix an intrastate rate, whether arising under the former laws or under the Transportation Act of 1920, is collateral and incidental to its rights to regulate interstate traffic; the branch may overhang the intrastate field only because the branch is essential to the maintenance of the tree planted in interstate soil. The incident cannot exist without the principal fact to which it is collateral; the branch cannot keep its position, if there is no tree. The Interstate Commission's whole power to regulate interstate commerce is modified by the exception that it may not forbid discrimination in favor of a state. Its power to control intrastate commerce must be modified by the same exception.

[7] We think the Interstate Commission order should be enjoined, and the State Commission order should remain in force. Manifestly this result should follow only so far as the freight in question is to be carried "for the United States, state, or municipal governments." The

preference should not be determined by the mere fact that the government is or is not shipper or consignee. Precisely the proper provision seems to be made by the Interstate Commerce Commission Conference Ruling No. 36, which permits the preference to be given only in case the title to the property passes to the government or is vested in the government at the point of the origin of its transportation. Havens v. Chicago & N. W. Railway Co., 20 Interst. Com. Com'n R. 156. No other formula now occurs to us by which it can be made certain that only the government will get the benefit of the preference.

Counsel may prepare and submit a final decree in accordance with these views.