## THE CHICAGO JUNCTION CASE.[1]

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 489.   Argued January 24, 1924.—Decided March 3, 1924.

1. An order of the Interstate Commerce Commission permitting one
   carrier to acquire control of another, made under par. 2 of § 5 of
   the amended Act to Regulate Commerce, which allows this when-
   ever the Commission is of opinion, after hearing, that the ac-
   quisition will be in the public interest, is subject to judicial review.
   P. 263.
2. Such an order is void if the finding that the acquisition will be in
   the public interest is made without supporting evidence.   P. 265.
3. Facts conceivably known to the Commission but not put in
   evidence will not support an order.   P. 263.
4. In a bill to set aside such an order, an allegation that such finding
   was wholly unsupported by evidence charges a fact which must
   be taken as admitted on appeal from a decree dismissing the bill on
   motion equivalent to a demurrer.   P. 262.
5. Carriers which suffer serious disadvantage, prejudice and loss of
   traffic from the transfer of neutral terminal railroads to the control
   of a competitor, and which intervened unsuccessfully before the
   Commission in opposition to such transfer, have a standing to
   attack the order permitting it, upon the ground that there was no
   evidence to support the finding of public interest on which the order
   was based.   P. 266.
6. Section 212, Jud. Code, which declares that any party to a pro-
   ceeding before the Interstate Commerce Commission may, as of

---

[1] The docket title of this case is: *Baltimore & Ohio Railroad Com-
pany et al.* v. *United States, Interstate Commerce Commission, New
York Central Railroad Company, et al.*

right, become a party to any suit wherein is involved the validity of its order, impliedly authorizes one who was permitted to oppose an order before the Commission by intervention, to institute a suit to challenge it. P. 267.

7. Under the Act of October 22, 1913, a suit may be brought to set aside an order of the Commission and also to restore the *status quo ante,* by joining with the United States private parties who appeared before the Commission and have acquired rights under the order. P. 269.

Reversed.

APPEAL from a decree of the District Court denying an interlocutory injunction and dismissing the bill, on motion, in a suit to set aside an order of the Interstate Commerce Commission.

*Mr. Luther M. Walter,* with whom *Mr. John S. Burch- more* was on the brief, for appellants.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Mr. Attorney General Daugherty* and *Mr. Solicitor General Beck* were on the brief, for the United States.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. Ralph M. Shaw,* with whom *Mr. Silas H. Strawn, Mr. Guy Currier* and *Mr. Frederick C. Hack* were on the brief, for Chicago Junction Railway Company et al., appellees.

*Mr. Robert J. Cary* filed a brief on behalf of New York Central Railroad Company and Chicago River & Indiana Railroad Company, appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Chicago Junction Railway and the Chicago River and Indiana Railroad are terminal railroads located

within the Chicago switching district. Prior to May 16,
1922, they were operated as independent belt-lines, un-
controlled by any trunk line carrier; and they were used
by the twenty-three railroads entering Chicago, impar-
tially and without discrimination. Among these were the
New York Central Lines and their chief competitors, the
six carriers who are plaintiffs in this suit.[1] The New York
Central sought to obtain control of these terminal rail-
roads. To this end, it made an application to the Inter-
state Commerce Commission, on December 28, 1920,
under paragraph 18 of § 1 and paragraph 2 of § 5 of the
Act to Regulate Commerce as amended by Transporta-
tion Act, 1920, c. 91, 41 Stat. 456, 477, 481.[2] The author-
ization requested was to make an agreement with stock-
holders then owning these properties by which, among
other things, the New York Central would purchase all
the capital stock of the Chicago River and Indiana Rail-
road for $750,000; and the latter company would lease
for 99 years (and thereafter) the Chicago Junction Rail-
way at an annual rental of $2,000,000. Upon this appli-
cation hearings were had. The Baltimore and Ohio
Railroad, and its co-plaintiffs herein, intervened, and
opposed granting the application. On May 16, 1922, an
order was entered which authorized the New York Central
to acquire the Chicago River and Indiana Railroad stock;

[1] The Baltimore & Ohio, the Pennsylvania, the Chicago & Erie, the
Grand Trunk Western, the Chicago, Indianapolis & Louisville, and
the Pittsburg, Cincinnati, Chicago & St. Louis. The Wabash, origi-
nally joined as plaintiff, was dismissed on its own motion.

[2] Neither of the operating companies affected joined in the applica-
tion of the New York Central; and no separate application to the
Commission was filed by either of them. But they were represented
before the Commission; and the petition of the New York Central
prayed that the several corporations involved be authorized to sell
and to buy such stock, and to execute such lease; and that the
Commission "issue in respect thereof its certificate of public con-
venience and necessity."

and authorized the latter company to lease the Chicago Junction Railway.[3] *Chicago Junction Case,* 71 I. C. C. 631. The order did not fix the date when it should become effective.[4] Immediately after its entry, the purchase of the stock was completed and the lease was executed.

On April 10, 1923, this suit was brought in the federal court for the Northern District of Illinois against the United States, the Commission, the New York Central, the terminal railroads and the stockholders thereof.[5] The relief sought is to have the order declared void; to have

---

[3] The report entitled " By the Commission," states that the authority is granted subject only to the observance of seventeen conditions which it enumerates. Applications under paragraph 18 of § 1 and paragraph 2 of § 5 are customarily heard by Division 4 consisting of four commissioners. See Interstate Commerce Act, § 17; Annual Report of the Commission for 1920, pp. 3–6. But this case was heard by the full Commission. The Commission consists of eleven members. Only four concurred entirely in what is called the Report of the Commission. Four others dissented wholly. One " concurred in part " declaring that the " facts warrant grant of authority without elaboration of conditions " which (with two exceptions) seemed to him " vain, perhaps harmful." The two other members concurred " in the result reached in the report," but declared that the opinion " should recognize﹐ explicitly that the application should have been entertained under section 1, paragraph 18, of the act; and that in accordance therewith a certificate of public convenience and necessity should be incorporated in the order entered."

[4] On May 29, 1922, the intervening carriers filed a petition praying that the order be set aside or modified. The petition was denied June 12, 1922.

[5] The agreement of the New York Central was with the Chicago Junction Railways and Union Stock Yards Company, a holding company, which owned all the stock in the Chicago River and Indiana Railroad and half of the stock in the Chicago Junction Railway; the other half being owned by Richard Fitzgerald, who wished to join in making the sale transferring control. The property to be leased included the railroad of the Union Stock Yards and Transit Company of Chicago, which had theretofore been leased to the Chicago Junction Railway.

set aside the sale of the stock and the lease; to restore the *status quo ante* the order; and for an injunction. The case was heard before three judges on plaintiffs' motion for an interlocutory injunction and on defendants' motions to dismiss the bill.[6] The District Court, without opinion, denied the injunction and dismissed the bill. The case is here on direct appeal under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220.

The order did not provide for the issue of a certificate of public convenience and necessity. It did not disclose whether it was issued under paragraph 18 of § 1 or under paragraph 2 of § 5. An application, by the carriers who are plaintiffs herein, that this be specified was denied by the Commission without opinion. In this Court counsel for all the defendants stated that the order was entered solely under paragraph 2 of § 5. We have, therefore, no occasion to consider the incidents of applications under paragraph 18 of § 1, or rights thereunder. Several reasons are urged why the order should be held void. The defendants, besides asserting its validity, insist that the plaintiffs have no interest which entitles them to assail the order; and that there are, also, other obstacles to the maintenance of this suit.

*First.* Plaintiffs contend that the order is void because there was no evidence to support the finding that the acquisition of control of the terminal railroads by the New York Central " will be in the public interest." The bill charges, in clear and definite terms, that this finding was wholly unsupported by evidence. We must take that fact as admitted for the purposes of this appeal. The allega-

---

[6] When the cause was heard on the original bill the hearing was upon motions to dismiss filed by the United States, the New York Central, the Chicago River and Indiana Railroad, the Chicago Junction Railways and Union Stock Yards Company, the Chicago Junction Railway and Richard Fitzgerald; and upon the answer of the Interstate Commerce Commission. The bill was then amended. Thereupon, the case was heard solely on the motions to dismiss.

tion is made as one of fact.　There is no suggestion in the motions to dismiss (which are both general and special) that this fact is not well pleaded; or that a copy of the evidence introduced at the hearing should have been annexed to the bill.　Compare *Louisiana & Pine Bluff Ry. Co.* v. *United States,* 257 U. S. 114.　Facts conceivably known to the Commission but not put in evidence will not support an order.　*Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88, 93.　The defendants concede that the New York Central could not legally acquire control of these terminal railroads unless authorized so to do by the Commission pursuant to paragraph 2 of § 5; and that the Commission cannot legally grant such authority unless it finds, after hearing, that the acquisition " will be in the public interest."　They contend that this order is not one of those subject to judicial review; and that, if subject to review, it cannot be held void merely because unsupported by evidence.　These objections are based on the nature of the order, not on the class of persons by whom the judicial review is invoked.

Whether this order can be described properly as legislative, may be doubted.　It is clear that legislative character alone would not preclude judicial review.　Rate orders are clearly legislative.　*Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, 226.　Nor would the further fact that the order is permissive preclude review, if by that term is meant an order which, in contradistinction to one compelling performance, authorizes a carrier to do some act otherwise prohibited.　Orders entered under the Act of June 18, 1910, c. 309, 36 Stat. 539, 547, amending § 4 of the Interstate Commerce Act, are of this character.　That section prohibits carriers from charging more " for a shorter than for a longer distance over the same line or route in the same direction " without obtaining authority from the Commission.　A suit will lie to set aside an order granting such authority, and to enjoin action by the carrier there-

under. *Skinner & Eddy Corporation* v. *United States,* 249 U. S. 557, 562. Compare *United States* v. *Merchants & Manufacturers Traffic Association,* 242 U. S. 178. The order here challenged is wholly unlike those which have been held not subject to judicial review. In *United States* v. *Illinois Central R. R. Co.,* 244 U. S. 82, 89, the action of the Commission, with which the Court refused to interfere, was the assignment of a complaint for hearing. As this Court said: " The notice . . . had no characteristic of an order, affirmative or negative." In *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; *Hooker* v. *Knapp,* 225 U. S. 302; and *Lehigh Valley R. R. Co.* v. *United States,* 243 U. S. 412, judicial review was refused, not because the order was permissive, or because it was negative in character, but because it was a denial of the affirmative relief sought.[7] This Court declined to interfere, because to do so would have involved exercise by it of the administrative function of granting the relief which the Commission, in the exercise of its jurisdiction, had denied. Here the order complained of is an affirmative one. That is, it grants the relief sought. Compare *Manufacturers Ry. Co.* v. *United States,* 246 U. S. 457, 483.

It is further contended that paragraph 2 of § 5 confers a power purely discretionary, and that, for this reason, the order entered cannot be set aside by a court merely on the ground that the action taken was based on facts erroneously assumed, or of which there was no evidence.[8] The power here challenged is not of that character. Con-

---

[7] Compare *Interstate Commerce Commission* v. *Waste Merchants Assn.,* 260 U. S. 32. The mandamus was granted in *Interstate Commerce Commission* v. *Humboldt S. S. Co.,* 224 U. S. 474, and *Louisville Cement Co.* v. *Interstate Commerce Commission,* 246 U. S. 638, because the Commission erroneously refused to assume jurisdiction. See also *Kansas City Southern Ry. Co.* v. *Interstate Commerce Commission,* 252 U. S. 178.

[8] Compare *Martin* v. *Mott,* 12 Wheat. 19, 29–33; *Philadelphia & Trenton R. R. Co.* v. *Stimpson,* 14 Pet. 448, 458,

gress by using the phrase "whenever the Commission is of opinion, after hearing," prescribed quasi-judicial action.[9] Upon application of a carrier, the Commission must form a judgment whether the acquisition proposed will be in the public interest. It may form this judgment only after hearing.[10] The provision for a hearing implies both the privilege of introducing evidence and the duty of deciding in accordance with it. To refuse to consider evidence introduced or to make an essential finding without supporting evidence is arbitrary action. As it was admitted by the motion that the order was unsupported by evidence, and since such an order is void, there is no occasion

[9] The same phrase is used in the Interstate Commerce Act in respect to many other classes of orders. These orders, so far as considered by this Court, have uniformly been held to be subject to judicial review; and where an essential finding was unsupported by evidence, the order was declared to be void. (1) Unreasonable rates, § 15, par. 1; *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88, 91; *Florida East Coast Ry. Co.* v. *United States,* 234 U. S. 167, 185. (2) Discriminatory rates, § 15, par. 1; compare *New York* v. *United States,* 257 U. S. 591, 600. (3) Switching connections, § 1, par. 9; *United States* v. *Baltimore & Ohio Southwestern R. R. Co.,* 226 U. S. 14. (4) Division of joint rates, § 15, par. 6; compare *New England Divisions Case,* 261 U. S. 184, 203. (5) Pooling, § 5, par. 1. (6) Railroad control of water carriers, § 5, par. 10. (7) Valuation, § 19a, par. Fifth *i.*

[10] Transportation Act, 1920, like the original Act to Regulate Commerce and earlier amendments, distinguished, by the language used and, also, in other respects, between those orders which can be made only after hearing and those as to which no hearing is required. Thus, orders on applications for extension of line, for new construction, or for abandonment under § 1, pars. 18–20, can be made only after hearing. But in the case of applications concerning the issue of securities under § 20a, par. 6, the Commission may hold hearings "if it sees fit." See *Miller* v. *United States,* 277 Fed. 95. And under the emergency provisions, § 1, pars. 15 and 16, and § 15, par. 4, the order may be issued without a hearing, but "terms" are fixed after "subsequent hearings." *Peoria & Pekin Union Ry. Co.* v. *United States,* 263 U. S. 528.

to consider the other grounds of invalidity asserted by plaintiffs.

*Second.* The defendants contend that the plaintiffs have not the legal interest necessary to entitle them to challenge the order. That they have in fact a vital interest is admitted. They are the competitors of the New York Central. Practically all the tonnage originated at or destined to points on these terminal railroads is competitive, in that the same can be hauled either over the lines of the New York Central or over those of the plaintiffs. Prior to the date of the order, and while the terminal railroads were uncontrolled by any trunk line carrier, they were all served impartially and without discrimination; and they competed for the traffic on equal terms. The order substitutes for neutral control of the terminal railroads, monopoly of control in the New York Central; and, in so doing, necessarily gives to it substantial advantage over all its competitors and subjects the latter to serious disadvantage and prejudice. The main purpose of the acquisition by the New York Central was to secure a larger share of the Chicago business. By means of the preferential position incident to the control of these terminal railroads, it planned to obtain traffic theretofore enjoyed by its competitors. Because such was the purpose of the New York Central control, and would necessarily be its effect, these plaintiffs intervened before the Commission. That their apprehensions were well founded is shown by the results. The plaintiffs are no longer permitted to compete with the New York Central on equal terms. A large volume of traffic has been diverted from their lines to those of the New York Central. The diversion of traffic has already subjected the plaintiffs to irreparable injury. The loss sustained exceeds $10,000,000. Continued control by the New York Central will subject them to an annual loss in net earnings of approximately that amount. If, as suggested in *Interstate Commerce Commission* v.

*Chicago, Rock Island & Pacific Ry. Co.*, 218 U. S. 88, 109, a legal interest exists where carriers' revenues may be affected, there is clearly such an interest here.

This loss is not the incident of more effective competition. Compare *Edward Hines Trustees* v. *United States*, 263 U. S. 143, 148. It is injury inflicted by denying to the plaintiffs equality of treatment. To such treatment carriers are, under the Interstate Commerce Act, as fully entitled as any shipper. *Pennsylvania Co.* v. *United States*, 236 U. S. 351. It is true that, before Transportation Act, 1920, the Interstate Commerce Act would not have prohibited the owners of the terminal railroads from selling them to the New York Central. Nor would it have prohibited the latter company from making the purchase. And, by reason of a provision then contained in § 3 of the Interstate Commerce Act, the purchase might have enabled the New York Central to exclude all other carriers from use of the terminals. Compare *Louisville & Nashville R. R. Co.* v. *United States*, 242 U. S. 60; *Manufacturers Ry. Co.* v. *United States*, 246 U. S. 457, 482. But Transportation Act, 1920 repealed that provision in § 3; it made provision for securing joint use of terminals; and it prohibited any acquisition of a railroad by a carrier, unless authorized by the Commission. By reason of this legislation, the plaintiffs, being competitors of the New York Central and users of the terminal railroads theretofore neutral, have a special interest in the proposal to transfer the control to that company.

The plaintiffs may challenge the order because they are parties to it. The Judicial Code, § 212 (originally the Commerce Court Act, June 18, 1910, c. 309, 36 Stat. 542,) declares that any party to a proceeding before the Commission may, as of right, become a party to "any suit wherein is involved the validity of such order." The section does not in terms provide that such party may insti-

tute a suit to challenge the order. But this is implied. For, otherwise, there would in some cases be no redress for the injury inflicted by an illegal order. Moreover, the fact of intervention, allowed as it was, implies a finding by the Commission that the plaintiffs have an interest. In the proceeding before the Commission, they opposed by evidence and argument the granting of the application. This they did as of right. For under the rules of practice, adopted by the Commission pursuant to paragraph 1 of § 17 of the Interstate Commerce Act, the intervener becomes a party to the proceeding, entitled, like any other party, to appear at the taking of testimony, to produce and cross-examine witnesses, and to be heard in person or by counsel.[11] The intervention must be preceded by an order of the Commission granting leave; and leave can be granted only to one showing interest. No case has been found in which either this Court, or any lower court, has denied to one who was a party to the proceedings before the Commission the right to challenge the order entered therein. On the other hand, persons who were entitled to become parties before the Commission but did not do so, have been allowed to maintain such suits where the requisite interest was shown. *Interstate Commerce Com-*

---

[11] Rules of Practice (1923), pp. 2, 27, 28. The Commission, like courts, distinguishes between those who are permitted to intervene, and thus become parties, and persons who are merely permitted to be heard. See *Hurlburt* v. *Lake Shore & Michigan Southern Ry. Co.*, 2 I. C. C. 122, 125. Compare *Ex parte Leaf Tobacco Board of Trade*, 222 U. S. 578.

Leave to intervene can be granted only to one entitled under the act to complain to the Commission. The right to complain was broadly bestowed by Congress. Act of February 4, 1887, c. 104, § 13, 24 Stat. 379, 383, as amended June 18, 1910, c. 309, § 11, 36 Stat. 539, 550, 557. From its inception, the Commission has construed liberally this right to complain. See *Boston & Albany R. R. Co.* v. *Boston & Lowell R. R. Co.*, 1 I. C. C. 158, 173, 174; *In re Chicago, St. Paul & Kansas City Ry. Co.*, 2 I. C. C. 231, 235.

*mission* v. *Diffenbaugh*, 222 U. S. 42, 49; *Skinner & Eddy Corporation* v. *United States*, 249 U. S. 557, 562.[12]

*Third.* It is contended that this bill was properly dismissed for want of jurisdiction, at least as to the terminal companies and their stockholders other than the New York Central, because the plaintiffs have joined with the suit to set aside the order, a suit to restore the *status quo.* The objection is not that the bill is multifarious, or that it is otherwise in conflict with established equity practice. The argument is that the United States is a necessary party; that, against it, suit can be brought only when Congress gives consent; that the suit was brought necessarily and solely under the Act of October 22, 1913, c. 32, 38 Stat. 219, 220; and that the consent so given does not extend to a suit in which it is sought to set aside both the order and rights acquired by private persons thereunder. There is nothing in the legislation to indicate that Congress intended such a limitation of the scope of the relief

---

[12] The order involved in the latter case—relief from the operation of the Fourth Section—resembles in character that here in question.

See also *Nashville Grain Exchange* v. *United States*, 191 Fed. 37; *Atlantic Coast Line R. Co.* v. *Interstate Commerce Commission*, 194 Fed. 449; *Merchants' & Manufacturers' Traffic Association* v. *United States*, 231 Fed. 292; *McLean Lumber Co.* v. *United States*, 237 Fed. 460; *City of New York* v. *United States*, 272 Fed. 768, 769; *Village of Hubbard* v. *United States*, 278 Fed. 754, 759; *Tennessee* v. *United States*, 284 Fed. 371, s. c., *Nashville, etc. Ry.* v. *Tennessee*, 262 U. S. 318; *Detroit & M. Ry. Co.* v. *Boyne City, G. & A. R. Co.*, 286 Fed. 540, 548.

In *Edward Hines Trustees* v. *United States*, 263 U. S. 143, 147, 148, the bill was dismissed because it failed to disclose any interest in the plaintiff. Cases like *Railroad Co.* v. *Ellerman*, 105 U. S. 166, which are not brought under the Interstate Commerce Act, have no bearing on the question here presented. The contention that under the principle applied in *Muskrat* v. *United States*, 219 U. S. 346, Congress was without power to confer upon persons situated like the plaintiffs the right to challenge in the courts the validity of the order is unsound.

to be afforded. The sale of the stock and the lease, which it is sought to set aside, were made immediately after entry of the order; that is, before expiration of the thirty days provided by paragraph 2 of § 15; and before the plaintiffs' petition to set aside or modify the order had been disposed of. To permit the joinder objected to could not prejudice the United States. To prohibit the joinder would, in large measure, defeat the very purpose of the bill and would clearly prevent that expedition in affording relief which it was the purpose of Congress to ensure. Act of February 11, 1903, c. 544, 32 Stat. 823. Moreover, the terminal companies, and the stockholders affected, were entitled to intervene as parties in the proceedings before the Commission; and they appeared by counsel. If they became parties to the proceeding before the Commission, they were entitled, under § 212 of the Judicial Code, to become parties, also, to any suit brought to set aside the order. It was the policy of Congress to allow persons so situated to be joined in suits to enforce provisions of the Interstate Commerce Act. See Act of February 19, 1903, c. 708, § 2, 32 Stat. 847, 848. If this suit had been brought by the United States, the court could have given the complete relief prayed for. *United States* v. *Union Pacific Ry. Co.*, 160 U. S. 1, 50; *United States* v. *Union Pacific R. R. Co.*, 226 U. S. 61, 96. The same rule should apply where the suit to set aside the order is brought by a private party.[13]

The contention that the suit is barred by laches is clearly unfounded. The situation of none of the defendants appears to have been affected by the brief lapse of time. Compare *United States* v. *Southern Pacific Co.*, 259 U. S. 214, 240; *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 488.

*Reversed.*

[13] There is nothing to the contrary in *Illinois Central R. R. Co.* v. *State Public Utilities Commission*, 245 U. S. 493; *Oregon* v. *Hitchcock*, 202 U. S. 60; or *Minnesota* v. *Hitchcock*, 185 U. S. 373.

MR. JUSTICE SUTHERLAND, dissenting.

I think the injuries alleged to have been sustained by complainants are not such as to afford the basis for a legal remedy.    Complainants are interested only in the sense that the acquisition of the rights here in question by their competitor will enable the latter to absorb a larger share of the business.    That is not enough to constitute a remediable interest.

Before Transportation Act, 1920, the New York Central would have been free to acquire these terminals without the consent of the Commission.    If it had done so, its gain of business with the resulting loss to complainants would have been the same; but it would be inadmissible to assert that complainants might have maintained a suit to annul or enjoin the acquisition on the ground of that injury.    " The effort of a carrier to obtain more business . . . proceeds from the motive of self-interest which is recognized as legitimate." *United States* v. *Illinois Central R. R. Co.*, 263 U. S. 515, 523.    See *Johnson* v. *Hitchcock*, 15 Johns. (N. Y.) 185.

It is claimed, however, that Transportation Act, 1920, so alters the rule as to give a right of action to complainants where none existed before.    I am unable to perceive any sound basis for the conclusion.    That act, so far as this question is concerned, requires the carrier, as a prerequisite to an acquisition of the character here under consideration, to secure the authorization of the Commission, which that body may grant if " it will be in the public interest."    The mere effect of such acquisition upon the business of competing lines is no more to be considered since the Act of 1920 than it was prior to the passage thereof.    It is the public, not private, interest which is to be considered.

The complainants have no standing to vindicate the rights of the public, but only to protect and enforce their

own rights.   Redress for public grievances must be sought by public agents, not by private intervention.   *Home Telephone Co. v. Railroad Commission,* 174 Mich. 219. The right of the complainants to sue, therefore, cannot rest upon the alleged violation of a public interest, but must rest upon some distinct grievance of their own. Loss of business, or of opportunities to get business, attributable to the activity or increase of facilities on the part of a competitor is not enough.   Transportation Act, 1920, lays down no new or additional rule by which the question, What constitutes a legal or equitable right, interference with which may give rise to an action? may be tested; and the determination of that question must still rest upon general principles of jurisprudence.   See *Peavey & Co. v. Union Pacific R. Co.,* 176 Fed. 409, 417. In *Railroad Co. v. Ellerman,* 105 U. S. 166, 174, this Court held that a private complainant may not be heard by a court except for an " invasion of some legal or equitable right.   If he asserts that the competition of the railroad company damages him, the answer is, that it does not abridge or impair any such right.   If he alleges that the railroad company is acting beyond the warrant of the law, the answer is, that a violation of its charter does not of itself injuriously affect any of his rights.   The company is not shown to owe him any duty which it has not performed."

If it were conceded that the acquisition of the terminals by the New York Central was in the public interest, I suppose it would not be contended that complainants had any standing to interfere on the ground that their opportunities for obtaining business had been impaired.   And, since they are without legal right to intervene to redress a public grievance, the contrary fact that the acquisition will not be in the public interest cannot avail them. Their complaint must stand or fall upon the nature of their own grievance.   A private injury for which the law

258   SUTHERLAND, MCREYNOLDS and SANFORD, JJ., dissenting.

affords no remedy, cannot be converted into a remediable injury merely because it results from an act of which the public might complain. In other words, the law will afford redress to a litigant only for injuries which invade his own legal rights; and since the injuries here complained of are not of that character and do not result from the violation of any obligation owing to the complainants, it follows that they are without legal standing to sue.

The decision of the Court here proceeds upon the theory that the injury complained of is a denial of equality of treatment in the use of the terminals; but I do not understand this to be the gravamen of the bill. The complaint is of inequality of opportunity to get business—not of opportunity to use the terminals. Complainants' access to the use and enjoyment of the terminal facilities acquired by the New York Central, remains the same in respect of any business they may obtain. Interstate Commerce Act, § 3-(3), (4), as amended by Transportation Act, 1920, c. 91, 41 Stat. 479. The Commission granted the authorization only upon condition that the neutrality of the terminals in their handling of traffic should be preserved.[1] If their use be lessened, therefore, it will not be because access to the terminals has been, or is in danger of being, restricted, but because, with less business, there will be less occasion to use them. An illustration may be helpful: Suppose, instead of these terminal facilities, the acquisition had been of a line of railroad running west from Chicago, which, prior thereto, had been neutral and

---

[1] Among other conditions is the following:

" 2. The present neutrality of handling traffic inbound and outbound by the Junction and River Road organization shall be continued so as to permit equal opportunity for service to and from all trunk lines reaching Junction rails, without discrimination as to routing or movement of traffic which is competitive with the traffic of the Central, and without discrimination against such competitive traffic in the arrangement of schedules."

whose business had been distributed without favor among the several eastern lines terminating at that city. It is manifest that the effect of such an acquisition would be, as it is here, to enable the New York Central to absorb more of the traffic of the railroad so acquired than theretofore and, consequently, to lessen that received by other parallel lines running east from Chicago. In that situation, could any of such lines maintain a suit to annul the authorization of the Commission? It seems to me not; and I can see no difference in principle between the case supposed and that with which we are dealing.

I am authorized to say that MR. JUSTICE McREYNOLDS and MR. JUSTICE SANFORD concur in this dissent.