948

SOUTH CAROLINA PUBLIC SERVICE AU-
THORITY v. FEDERAL POWER COM-
MISSION (SOUTH CAROLINA ELEC-
TRIC & GAS CO., Intervener).

SOUTH CAROLINA PUBLIC SERVICE
AUTHORITY v. SECURITIES AND EX-
CHANGE COMMISSION (COMMON-
WEALTH & SOUTHERN CORPORA-
TION, Intervener).

Nos. 5793, 5757.

United States Court of Appeals
Fourth Circuit.

Nov. 10, 1948.

Wm. S. Youngman, Jr., of Washington,
D. C. (Duncan C. Lee, of New York City,
John W. Scott, of Washington, D. C., and
R. M. Jefferies, of Walterboro, S. C., on
the brief), for petitioner.

Roger S. Foster, Gen. Counsel, Securi-
ties and Exchange Commission, of Wash-
ington, D. C. (Harry G. Slater, Chief
Counsel, Division of Public Utilities, My-
ron Isaacs, Sp. Counsel, and Sidney Shem-
el, Harold Sweetwood, and Alfred Hill,
Attys., Securities and Exchange Commis-
sion, all of Washington, D. C., on the
brief), for respondent Securities & Ex-
change Commission.

George Roberts, of New York City
(Winthrop, Stimson, Putnam & Roberts, of
New York City, Hunton, Williams, Ander-
son, Gay & Moore, of Richmond, Va., Hay-
den N. Smith, of New York City, T. Justin
Moore and John W. Riely, both of Rich-
mond, Va., on the brief), for Common-
wealth & Southern Corporation, inter-
vener.

Leonard Eesley, Atty., Federal Power Commission, of Washington, D. C. (Bradford Ross, Gen. Counsel, Howard E. Wahrenbrock, Asst. Gen. Counsel, Louis W. McKernan, Francis R. Bell, and Francis L. Hall, Attys., Federal Power Commission, all of Washington, D. C., on the brief), for respondent Federal Power Commission.

J. B. S. Lyles, of Columbia, S. C. (W. C. McLain, of Columbia, S. C., on the brief), for South Carolina Electric & Gas Co., intervener.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are petitions to review decisions of the Securities and Exchange Commission and the Federal Power Commission approving respectively the sale by the Commonwealth and Southern Company and the purchase by the South Carolina Electric and Gas Company of all the common stock (800,000 shares) of the South Carolina Power Company. Commonwealth and Southern had been ordered by the S. E. C., under section 11(b) (1) of the Public Utility Holding Company Act of 1935, 15 U.S. C.A. § 79, to divest itself of ownership of the stock of the South Carolina Power Company. It entered into a contract with the South Carolina Electric and Gas Company on October 28, 1947, to sell the stock to that company at the price of $10,200,000. The sale by Commonwealth and Southern was approved by the S. E. C. in an order dated March 25, 1948. The purchase by Electric and Gas was approved by order of the F. P. C. of April 29, 1948. Prior to these orders, on December 23, 1947, the issuance of securities by Electric and Gas to finance the purchase had been approved by an order of the South Carolina Public Service Commission, in a proceeding wherein the transaction had been subjected to attack and a full hearing had been accorded with respect to all questions affecting the public interest. This order was approved on April 3, 1948, in an equity proceeding which had been brought in the courts of South Carolina to set it aside. The petitions to us, therefore, ask that we set aside orders of the S. E. C. and the F. P. C. with respect to a transaction over which they are given full supervisory power, and which has been approved, after the fullest hearing, not only by them but also by the state Public Service Commission and the state courts.

The petitioner in both cases before us is the South Carolina Public Service Authority, a state owned public utility company which generates and sells electrical energy in the State of South Carolina. Contention is made that it is not a party aggrieved by either the order of the S. E. C. or that of the F. P. C. so as to have a locus standi to prosecute the actions here. Assuming without deciding, however, that the petitioner can be considered a party aggrieved by the orders of the S. E. C. and the F. P. C. here under consideration, we are nevertheless of the view that it has made no case which would justify us in disturbing the orders.

The grounds of attack upon the sale and purchase of the stock are that petitioner, the South Carolina Public Service Authority, had offered a higher price for the stock than the sale price, that exemption had been granted from competitive bidding and that an offer of petitioner to cause a 10% reduction in the rates of the Power Company, if petitioner should become the purchaser of its stock, had been ignored. It appears, however, that both the S. E. C. and the F. P. C. gave full consideration to the contentions regarding all these matters, heard the evidence bearing thereon and found in them nothing requiring that the sale to Electric and Gas be disapproved. The offer of the Authority was made in the teeth of a decision of the South Carolina Supreme Court that it had no power to make a purchase of this character; and, while there was a proposal from the Authority that a case be made and submitted to that court for the purpose of obtaining a ruling which would approve the sale, there was no certainty that such a ruling would be made and no justification for requiring the Commonwealth and Southern to forego a sale, at a reasonable price which it desired to accept, upon the chance that it might obtain more if the South Carolina Court should reverse the position it had taken. With respect to competitive bid-

ding, the S. E. C. found from abundant evidence that there was no reason to require this in view of the wide publicity which had been given the matter and of the lack of interest on the part of anyone other than the Authority and the purchaser. So far as the offer to reduce rates was concerned, this was a matter for a rate hearing before South Carolina Public Service Commission, as that commission itself pointed out.

The crucial matter in the case is the decision of the Supreme Court of South Carolina, in Creech v. South Carolina Public Service Authority, 200 S.C. 127, 20 S.E.2d 645, 650, which stands in the way of purchase by the Authority. There can be no question but that the order of the S. E. C. approving the sale by Commonwealth and Southern and the order of the F. P. C. approving the purchase by Electric and Gas would be unassailable but for the offer made by the Authority; and we agree with the S. E. C. that the decision in the Creech case raises such doubt as to the ability of the Authority to purchase that its offer should not be considered as ground for invalidating the proposed sale. As the matter was put by the S. E. C.:

"On the record before us, we are persuaded that there is grave doubt concerning the Authority's ability to acquire the common stock of Power, that a substantial period of time may be necessary to resolve that doubt, and that the real danger to Commonwealth from delay and from an adverse ruling and the fact that there is only one other prospective purchaser in the field, are sufficient to support Commonwealth's decision to sell to Electric & Gas. It is obvious that the legal questions involved can be determined finally only by the appropriate State Courts, and we do not purport to forecast the probable outcome or the period necessary to obtain a final decision. However, an attempted sale to the Authority might result in long delay and ultimate failure. Such delay would involve cash stringency, in view of the pending construction program of the Commonwealth system. A final determination adverse to the Authority would leave Commonwealth in a substantially impaired bargaining position, and might well result in its inability to procure a satisfactory price

for its interest in Power. Under the circumstances, we cannot find that the management's acceptance of the bid of Electric & Gas was unwarranted."

That the S. E. C. did not overestimate the obstacle presented by the Creech case is perfectly clear. That suit was instituted to enjoin the Authority from purchasing the properties of Electric and Gas and the Lexington Water Power Company. In holding that the Authority might not acquire these properties, the Supreme Court of South Carolina bases its decision, not on the location of the properties, as petitioner argues, but upon the lack of power on the part of the Authority to acquire an existing utility system. The court said:

"When the Authority was given the power to develop the Cooper, the Santee, and the Congaree Rivers, it was charged with the duty to evolve latent possibilities and to make available resources hitherto undeveloped. This thought and this purpose is carried to a fuller expression in subdivisions 4, 5, and 7 of Section 3.

\*    \*    \*    \*    \*    \*

"But nowhere in these subdivisions do we find any language upon which to hinge the vast powers now contended for by the Authority. It would have been a simple matter for the Legislature to have explicitly provided for the purchase of established, existing power plants and public utilities in the area claimed, but it has not done so. Can it be fairly said that the power to purchase real and personal property (subdivision 4), and the power to build, acquire, construct and maintain power houses, etc. (subdivision 7) also evince the clear legislative intent to authorize the purchase of already fully developed public utility businesses serving great areas of the State? We think not. The words in their natural context and in their relation to the whole act are reasonably referable and conclusively so we think, to the power to develop and construct by bringing into being new facilities, rather than the power to buy or acquire great power plants long since engaged in the production of electric energy. It was never the intention of the legislature, as we gather from the whole act, that the Authority should be given the power to buy an existing utility system in order to

produce, distribute and sell electric power. * * *

"We think the manifest intention of Section 5, taken in connection with the entire act, plainly confines and limits the Authority either to develop a power or navigation project, or else to acquire such a project already planned, but incomplete. It does not include an operating utility plant. The word 'project' in these latter years of State and Federal construction of public works, has a well known and generally recognized connotation which carries the meaning of a planned undertaking, a definitely formulated scheme or proposal. The project referred to in Section 5 might be merely in the blueprint stage, but it would do violence to Section 5, as well as to the whole tenor of the enabling act to say that this section authorizes the purchase of old established utilities which had long been in the field of electric power production."

A petition for rehearing was presented in the Creech case and a memorandum was filed by the court to the effect that the properties to which the decision related were "situated at and north of Columbia;" that the pleadings confined the court to the question of the right of the Authority to acquire those properties and that the court would not decide any other issue. Nothing was said in the memorandum, however, which detracted in any way from the ratio decidendi as set forth in the opinion; and although the only thing in issue was the right to acquire properties at and north of Columbia, the reasons given for denying the right are equally applicable to the acquisition of similar properties elsewhere. Unless the principles observed in interpreting judicial precedents are to be entirely disregarded, it is clear that the question of the right of the Authority to acquire the property of another power company has been squarely decided against it by the court whose decisions with respect to the matter are binding upon all of us.

And we think it makes no difference that Commonwealth and Southern, in negotiations with the Authority, had offered that a proceeding be instituted to test the right of the Authority to purchase the stock, if the Authority would meet its price of $15 per share and agree to certain other conditions. The Authority refused to agree to these conditions, one of which was that, if the purchase was not made, the Authority would extend for a twenty-five year period its contract to sell electric power to the Power Company. Commonwealth and Southern may well have been willing to enter into negotiations that had little promise of being approved if assured of receiving the benefit of a valuable contract if they fell through. All of this was duly considered by the S. E. C. in reaching its conclusion and furnishes no ground for holding that the powers of the Commission were transcended, that it proceeded upon an erroneous theory of law or that it abused its powers in any way.

■ With the offer of the Authority out of the way, no substantial objection appears to the order of the Commission. Contention is made that Electric and Gas is not financially strong enough to make the purchase and that it would be better for some one other than that company to own the Power Company, but there was ample evidence to the contrary and the question is pre-eminently one for settlement by the Commissions without attempt on the part of the court to substitute its judgment for theirs. The case comes to this: Commonwealth and Southern has been ordered by the S. E. C. to divest itself of the Power Company stock. It has worked out a plan to carry out this order by sale to Electric and Gas. There is abundant evidence that the sale is fair to all parties, that it will result in divesting Commonwealth and Southern of all control over the property and that the ownership by Electric and Gas is consistent with the proper and economical development of an adequate supply of electrical energy in the territory. Under such circumstances we are bound by the findings of the Commissions approving the sale and purchase as in the public interest.

■ Motions have been made to dismiss both cases on the grounds that the contract for the sale of the stock has been carried out and that the cases have been rendered moot. We have no doubt, however, as to our power to order the parties to set aside the sale and restore the situation that existed prior to the entry of the orders if we

thought them invalid for any reason. The power of the court to review orders of the Commissions and grant effective relief may not be defeated by compliance with the orders. The Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667. For the reasons stated, however, we see no reason to interfere with either of the orders and they will accordingly be affirmed.

Affirmed.