**BROWN v. EASTERN STATES COR-
PORATION et al.**

No. 6029.

United States Court of Appeals
Fourth Circuit.

Argued March 6, 1950.

Decided April 4, 1950.

Eugene M. Feinblatt, Baltimore, Md., and
David I. Shivitz, New York City (Simon
E. Sobeloff, Baltimore, Md., and Edmund

B. Hennefeld, New York City, on brief), for appellant.

Horace R. Lamb, New York City, and George Cochran Doub, Baltimore, Md. (Marshall, Carey, Doub & Mundy, Baltimore, Md., and LeBoeuf & Lamb, New York City, on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order denying an interlocutory injunction and dismissing a suit instituted by the holder of preferred and common stock of a corporation to enjoin the carrying out of a plan of corporate reorganization. The suit was instituted in a state court but was removed into the court below on the ground that it involved a federal question. The court declined to remand the case to the state court after the complaint had been amended to eliminate all reference to rights under federal statutes and, after an extended hearing, dissolved the temporary restraining order that had been issued by the state court and dismissed the suit as involving no question not decided in the denial of injunctive relief. See Brown v. Eastern States Corporation et al., D.C., 86 F.Supp. 887. A motion was made by the appellee in this court to dismiss the appeal as moot and was heard along with the hearing of the appeal on the merits.

The litigation arises out of an attempted reorganization of the Eastern States Corporation which was and is the largest stockholder of the St. Regis Paper Company, holding 1,000,000 shares of the common stock of that corporation at the time the plan was inaugurated. Eastern is an investment corporation registered under the Investment Company Act, its sole business being the holding of stock of other corporations. It had approximately 4,000 stockholders, who held 572,132 shares of non par common stock of a stated value of $1 per share, 40,000 shares of series A, $7 guaranteed dividend, preferred stock, and 60,000 shares of series B, $6 guaranteed dividend, preferred stock. The preferred stock had a liquidation preference

of $10,000,000 plus accumulated dividends of $10,363,432, or a total of $20,363,432, which was entitled to payment ahead of common stock in case of liquidation. The assets of the corporation consisted of $457,000 in cash and the 1,000,000 shares of stock in the St. Regis Paper Company, which had a value of $6.75 per share or a total value of $6,750,000. The debts amounted to only $16,354. Upon a liquidation of the corporation in ordinary course, the common stock would have received nothing and the preferred stock would have received an average of $72 per share from the assets, as against an average of around $203 per share for which the preferred stockholders had a preferential claim.

The plan was approved by the directors of the corporation but was not submitted to or passed upon by the stockholders. It was submitted in a letter of the president, dated August 30, 1949, to the preferred stockholders and was in the form of a statement that the corporation would exchange its assets for shares of preferred stock, which would be retired by the corporation and the capital stock reduced accordingly. The proposal was that for each share of the $7 dividend series A preferred stock the corporation would exchange 9 shares of St. Regis stock (value $60.75) plus $4.79 in cash, and for each share of the $6 dividend series B preferred stock 8⅓ shares of St. Regis stock and $4.79 in cash, or an average of around $62.62 for each share of preferred stock. The plan pointed out that, assuming that all preferred stockholders accepted the plan, 860,-000 shares of stock and practically all of the cash of the corporation would go to the preferred stockholders, leaving 140,000 shares of the St. Regis stock, or approximately 13% of the assets of Eastern, for the common stockholders. The plan stated that Mr. Ferguson, the president, who was shown in the "letter of plan" to own 5,925 shares of preferred stock, had indicated that he would not tender his stock for exchange under the plan and, at another place that "if less than all of the outstanding shares of preferred stock are tendered for exchange, the liquidating value of unexchanged shares of preferred stock would

be enhanced, and that the amount of the enhancement would increase in direct proportion to the number of shares of preferred stock that are tendered for exchange." It was nowhere specifically pointed out or suggested, however, that the effect of the other preferred stockholders exchanging their stock and Mr. Ferguson's not exchanging his would be to give him, as a preferred stockholder, a preference claim on practically all the assets of the corporation, leaving little or nothing for the common stock.

In justification of the provisions of the plan offering the preferred stockholders approximately $10 per share less than the asset value of their shares, there was evidence that the shares were selling for from 20% to 40% less than the underlying shares of St. Regis to which the shareholders would have been entitled upon liquidation of the corporation. This fact, however, would doubtless have caused most of the holders of preferred stock, if this litigation had not intervened, to have exchanged their shares as proposed by the plan, even though they were not to receive under it their fair pro-rata of the assets.

The plan provided that it must be accepted not later than September 30, 1949; and early in September plaintiff, an owner of preferred as well as common stock, instituted this suit in a Maryland state court alleging that the plan was unfair and fraudulent and violative of the corporation law of Maryland and of the provisions of the Federal Investment Company Act of 1940, 15 U.S.C.A. § 80a—1 et seq. An interlocutory injunction was obtained from the state court when the suit was filed; but the case was promptly removed into the federal court on the ground that a federal question was involved, and motions were made, by the defendant to dissolve the injunction, and by the plaintiff to remand the case to the state court. Pending the hearing of these motions, plaintiff was granted leave to amend and filed an amended complaint making no reference to any rights under federal statutes. The judge below refused to remand the case to the state court and dissolved the injunction on September 26, 1949, on the ground that the plan was not fraudulent or violative of the corporation law of Maryland. Between September 26 and September 30, there were 27,464 shares of preferred stock exchanged pursuant to the provisions of the plan. Following this, motion was made by defendants to dismiss the suit; and this motion was granted by the judge below on October 7, 1949, on the ground that all questions in the case had been decided in passing upon the motion to dissolve the injunction and that, the time for acceptance of the plan having elapsed, plaintiff had no further need of the injunction which he sought. An order of dismissal was accordingly entered.

■■ Grave questions both of law and fact would be presented by the appeal, if plaintiff were in position to urge them. We do not mean by this to intimate any doubt as to the jurisdiction of the court or as to the correctness of the order denying the motion to remand. The original complaint unquestionably asserted that rights of plaintiff under federal statutes had been invaded; and this was sufficient to vest jurisdiction in the federal courts. 15 U.S.C.A. § 80a—43; Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189. Cf. Steele v. Louisville & N. R. Co., 323 U.S. 192, 207, 65 S.Ct. 226, 89 L.Ed. 173. The case was properly removable, therefore, to the federal court. 28 U.S.C.A. § 1441(a). And the fact that plaintiff subsequently amended his complaint in an attempt to eliminate the federal question did not make remand proper. Under the provision of the old judicial code relating to remand, 28 U.S.C.A. § 80, there was some conflict in the decisions,[1] but the revised code has used language which should remove all controversy and clearly establish the rule that the case is not to be remand-

---

1. Cf. Fischer v. Star Co. D.C., 227 F. 955, and Solanics v. Republic Steel Co., D.C., 34 F.Supp. 951, with Daland v. Hewitt Soap Co., D.C., 27 F.Supp. 482. And see discussion in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 293, 297, 58 S.Ct. 586, 82 L.Ed. 845, and Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334.

ed if it was properly removable upon the record as it stood at the time that the petition for removal was filed. 28 U.S.C.A. 1950 Revised Edition, § 1447(c).

With respect to the charge that the plan was unfair, however, it is no sufficient answer that its acceptance was a voluntary matter on the part of the stockholder consenting to an exchange thereunder. The fact that the preferred shares of the corporation could be sold only at from 20 to 40 per cent less than the underlying shares of St. Regis would be a great inducement to stockholders to accept, whether it provided a fair division of assets or not; and it can be well argued that it was an abuse of power on the part of the directors to put out a plan the effect of which, if accepted by all the preferred stockholders except the president, would give them approximately $10 per share less than the asset value of their stock and would result in a gain to him of more than eight hundred thousand dollars. The president and directors occupied a fiduciary relationship toward the stockholders; and for them to put forward a plan under which the assets of the corporation would be used in the purchase of stock in a way which would so greatly profit one of their number, would be difficult to justify under any principles of law or equity with which we are familiar. See Geddes v. Anaconda Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425.

 We think, also, that there was grave question as to whether the plan, not having been approved by the stockholders, was valid under the corporation law of Maryland. It involved, not an ordinary purchase of stock for redemption, as allowed by article 23, section 54(2), or an ordinary dealing by the corporation in its own stock, as provided for by article 23, section 54(8), but, if carried out as contemplated, a sale to its preferred stockholders of more than three-fourths of its assets and the retirement of 94% of its preferred stock, with a corresponding reduction of capital. It would have changed basically the nature and the holdings of the corporation; and the general rule is that such a basic change to be valid must have the approval of the stockholders in conformity with the statutes of the state of incorporation. See 13 Am. Jur. sec. 196, p. 315; 18 C.J.S., Corporations, § 269, p. 747; note 44 A.L.R. 16. The sections of the Maryland Code authorizing the corporation to deal in its own stock or to purchase and retire shares subject to redemption, must be construed in the light of this well-settled rule of corporation law, and cannot reasonably be given an interpretation which would validate a basic change in corporate structure without the consent of the stockholders. Particularly is this true in view of the provisions of section 32 of article 23 of the Code which requires the consent of stockholders to the reduction of capital stock and section 38 of article 23 which requires the approval of two-thirds of the stockholders where all or substantially all of the assets are sold, with provision for adequate protection of dissenting stockholders. Means which are legal may not be used to accomplish an end which is illegal.

 We need not decide these questions, however, since we do not think that the plaintiff is in a position to raise them. He has not been injured as a holder of either common or preferred stock by what has been done under the plan, nor has the corporation. On the contrary, his preferred stock has greater asset value and the corporation has greater assets in proportion to its outstanding liabilities as a result of the exchanges that have taken place. The only persons who have suffered loss to date, as a result of the plan, are the stockholders who have accepted it and exchanged their stock; but they are not complaining and plaintiff is not authorized to speak for them and does not profess to do so. It is argued that the St. Regis stock held by Eastern had a special block value and that this would have been dissipated under the plan. The plan has ended, however, and more than 70% of Eastern's St. Regis stock is still held by Eastern, and, since this is far greater than the holding of any other stockholder of St. Regis, the special block value, if there be any, has not been dissipated. Furthermore, the breaking up of the block of St. Regis stock was expressly authorized by the stockholders at

their meeting in April 1949, when they passed a resolution with regard to diversifying the holdings of the corporation. If the plan were still open to acceptance, plaintiff might be heard to speak in behalf of the corporate stockholders whose corporation was being radically changed without their consent; but the plan has expired under the time limitation which it prescribed, and it is clear that it cannot be extended since additional dividends on the preferred stock have accrued and other matters have occurred which render it impossible to carry out the plan as originally proposed. This we understand the proponents of the plan to concede. If it is still desired to go forward with an exchange of assets for preferred stock, it will be necessary that a new plan be devised and this may be submitted to the stockholders before attempt is made to put it into effect.

We are not impressed by the argument that the case is rendered moot merely by reason of the fact that the exchanges have taken place. If there were a party before the court who had suffered as the result of action which it was sought to enjoin, we have no doubt of the power and duty of this court to afford him relief upon a finding that he was entitled to the injunction for which he had applied. Cf. South Carolina Public Service Authority v. Securities and Exhange Commission, 4 Cir., 170 F.2d 948; Chicago Junction Case, 264 U.S. 258, 267, 44 S.Ct. 317, 68 L.Ed. 667. Surely this court is not less able to grant relief when reviewing a court than when reviewing an administrative agency. Plaintiff has not suffered, however, as a result of proceedings heretofore had under the plan and is not in position to invoke the power of the court with regard thereto; and it does not appear from the record that any further action is contemplated. For this reason, the order of dismissal was proper. The order dismissing the case will accordingly be affirmed, without prejudice, however, to the right of plaintiff to apply again for relief if further attempt should be made to carry out the plan or another plan thought to be violative of his rights as a stockholder.

Affirmed.